06-4046-ag
Alibasic v. Mukasey

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2007

Argued: March 28, 2008                                    Decided: October 17, 2008

Docket No. 06-4046-ag

_____

_____

BAJRAM ALIBASIC,

Petitioner,

-v-

MICHAEL B. MUKASEY, ATTORNEY GENERAL,[1]

Respondent.

_____

POOLER and HALL, Circuit Judges, and GLEESON, District Judge.[2]

_____

[1]  Pursuant to Federal Rule of Appellate Procedure 43(c)(2), current Attorney General Michael B. Mukasey is automatically substituted for former Attorney General Alberto R. Gonzales as the respondent in this case.

[2]  The Hon. John Gleeson, United States District Judge for the Eastern District of New York, sitting by designation.

After an IJ found Petitioner, an Albanian Muslim, credible and eligible for asylum based on the petitioner's testimony of past persecution and other information drawn from the 2004 Country Report, the Government appealed. The BIA vacated the grant of asylum based on its review of the 2004 Country Report and remanded to the IJ to consider "any available relief including voluntary departure." We have jurisdiction to review the BIA's order and conclude the BIA provided insufficient reasoning and did not demonstrate that its decision is based on substantial evidence. We GRANT the petition for review, VACATE the decision of the BIA and REMAND for further proceedings.

_____

MICHAEL P. DiRAIMONDO (Marialaina L. Masi, Mary Elizabeth Delli-Pizzi, and Stacy A. Huber, on the brief), DiRaimondo & Masi, LLP, Melville, NY, for Petitioner.

P. MICHAEL TRUMAN, Trial Attorney, Office of Immigration Litigation (Michelle Gorden LaTour, Assistant Director, R. Alexander Goring, Trial Attorney, Peter D. Keisler, Acting Attorney General, on the brief), U.S. Department of Justice, Washington, D.C., for Respondent.

POOLER, Circuit Judge:

We are asked on this appeal to review the August 3, 2006, decision of the Board of Immigration Appeals ("the BIA") which vacated the December 13, 2004, oral decision of Immigration Judge Margaret McManus ("the IJ"), of the United States Immigration Court, granting Bajram Alibasic's application for asylum under Section 208 of the Immigration and Nationality Act ("INA"), 8 U.S.C. Section 1158. In re Alibasic, No. A77 542 877 (BIA Aug. 3, 2006), vacating, No. A77 542 877 (Immig. Ct. New York City Dec. 13, 2004). In light of the Government's motion to dismiss Alibasic's petition for review, however, we must first consider whether we have jurisdiction to review the BIA's decision.

2

## FACTS

Alibasic's request for asylum arises from the extraordinarily violent disintegration of the former Yugoslavia.[3] According to the testimony he gave, through an interpreter, to the IJ, and to supporting documents he submitted to the Immigration Court, Alibasic is an Albanian Muslim, born on January 1, 1976, in Tivar, Montenegro, Yugoslavia. (JA 192; 563)[4] He left Yugoslavia on June 6, 1998, and traveled by way of Russia, Cuba, and Canada to arrive in the United States within two weeks. (JA 193-94; 571) At the time of his testimony, at least three of his siblings were resident in the United States, with one brother having been granted asylum. (JA 192-93; 316) Alibasic received a Notice to Appear, dated November, 15, 1999, charging him with being a removable alien pursuant to INA Section 212(a)(6)(A)(i). (JA 589) On January 12, 1999, Alibasic filed a Form I-589, Application for Asylum and for Withholding of Removal, and sought relief pursuant to Article 3 of the United Nations Convention Against Torture ("CAT"). (JA 563-73)

Alibasic told the IJ that he left his native country for the following reason:

> Because we're Albanians, we are a minority and the Serbs

---

[3] The course of events in the Balkans over the last two decades is impossible to summarize usefully, but for the purposes of this appeal, certain changes in political boundaries and nomenclature should be borne in mind. When Alibasic was born, in 1976, his native Montenegro was a constituent republic of the Socialist Federal Republic of Yugoslavia. See The World Factbook, Montenegro, at https://www.cia.gov/library/publications/the-world-factbook/geos/mj.html (last updated September 4, 2008). When the Socialist Federal Republic of Yugoslavia dissolved, in 1992, Montenegro joined a federation with Serbia, the Federal Republic of Yugoslavia. Id. In 2003, this latter entity renamed itself Serbia-Montenegro. Id. On June 3, 2006, after a popular referendum, Montenegro formally declared its independence from Serbia. Id.

[4] All references to the Joint Appendix, filed by the parties on October 10, 2007, will by cited as "(JA __)."

3

have mistreated us. And because of the Army, I had to go to Army. And as Albanian, Albanians who are mistreated in the Army. (JA 194)

Alibasic expressed his desire for asylum more fully in a statement attached to his revised

Form I-589, dated January 9, 2004:

> I came to the United States . . . to seek political asylum because as an Ethnic Albanian Muslim Albanian [sic] living in Montenegro, I have suffered mistreatment, discrimination, and humiliation from the Serbian government, Serbian soldiers, and Serbian people. My family and I were not able to have a normal life in Serbia-Montenegro; instead we lived under continuous fear of the racial persecution.
>
> *   *   *
>
> . . . I was involved in the peaceful protests and demonstrations that the Albanian[s] organized in order to raise their voice against the discriminative politic[s] of the Serbian government. We demonstrated for the human rights of the Albanians, freedom of speech in our language, and freedom of our religion. The Serbian police applied violence to interrupt these protests. They used tear gas, and beat the participants violently. Once a Serbian officer caught me and beat me right on the side of the street. . . . My problems with the government started in May 1998, when I received a draft notice to join the Yugoslavian army. The notice stated that I had to appear on May 28, 1998 to be drafted in the army. I rejected this notice because I knew that . . . the Serbian army was heading for a crackdown in Kosovo, and I did not want to be part of this army that would conduct crimes on my people. . . . I did not respond to the draft notice. Instead, I left my house and went to hide in my friends['] and relatives' houses. . . .
>
> After I left Montenegro, my parents told me that the Military Police had asked them many times about my whereabouts. The police had threatened my parents . . . . On October 2, 2002, my family received another notice for me to join the army. I was summoned to appear on October 23, 2002, to be drafted in the army. Since I did not appear, the Military Police went to my house and asked my parents. . . . The police had insulted and threatened my father. They had told him that I had no place in Montenegro

4

because I never responded to the authorities['] summons.  They warned my parents that the only place waiting for me was the prison.  My parents were very scared and upset and immediately noticed me.  They advised me to do everything possible to stay [in the United States] and never go back in Montenegro.  (JA 306-08)

As already noted, the IJ issued an oral decision on Alibasic's application on December 13, 2004.  Finding Alibasic's testimony to be "credible," the IJ yet held that he was not "eligible for asylum currently based on the fact that he is still refusing to go into the military because I do not find that there is evidence that he will be persecuted because of his past failure to go into the military."  (JA 156, 161)  In fact, the IJ concluded, "[t]here is no evidence that the military is currently engaged in human rights abuses as they clearly were in the past."  (JA 160)  Further, the IJ reviewed a State Department report, released on February 25, 2004, entitled "Serbia and Montenegro: Country Reports on Human Rights Practices" ("the 2004 Country Report"), and found it to be equivocal with respect to its implications for Alibasic's application.  Specifically, the IJ found that while the 2004 Country Report "talks about the government generally respecting human rights of citizens . . . there are still incidents of societal violence and discrimination against religious minorities, which [Alibasic] is."  (JA 162)  In addition, the IJ examined background materials submitted by Alibasic in support of his application, including one article, published in April 2004, but not specifically identified by the IJ, which discussed "backsliding in Serbia . . . including rapid deterioration in relations between Serbs and the major ethnic minorities including torching of mosques [and] desecration of cemeteries."  (JA 163)  The IJ then ruled as follows:

[A]lthough there ha[ve] been some improvements, I think that it can get worse again very quickly as indicated by the article . . . . So hopefully that will not happen but I think that [Alibasic], based on the current conditions in Serbia Montenegro, based on the fact

5

that he was beaten in the past and did experience some problems in the past, separate and apart from being called to the military, I think [he] can demonstrate a well-founded fear of persecution . . . and for that reason I think he is eligible for asylum. (JA 163)

The Government filed a timely appeal of the IJ's decision. (JA 150-52) In its decision, dated August 3, 2006, the BIA did not take issue with the IJ's finding that Alibasic had testified credibly, and it assumed for the sake of argument that the IJ had correctly found that Alibasic had demonstrated that he had been subjected to persecution prior to his leaving Serbia and Montenegro. (JA 113) The BIA nevertheless vacated the IJ's grant of asylum based upon a review of the 2004 Country Report that differs markedly from the IJ's summation of the same document. Specifically, the BIA found that the 2004 Country Report

> reflects that Serbia and Montenegro has undergone some fundamental changes since [Alibasic's] departure in May of 1998. The Country Report indicates that the regime of Slobodan Milosevic is no longer in power, the country is now policed by a Multi-Ethnic Police Force that includes ethnic Albanians, and the evidence reflects a gradual improvement of the conditions in Serbia and Montenegro. Although [Alibasic] claims he was persecuted as an ethnic Muslim Albanian, the Country Report indicates that the government generally respects its citizen's human rights, and the Deputy Minister for the Protection of the Rights of National Minorities in Montenegro indicated that there was "little ethnic violence in Montenegro during the war era" and that Montenegro's minority communities are a "respected part of a multi-ethnic state." (JA 113-14; citations omitted)

The BIA went on to note its "agreement with the [IJ's] determination that [Alibasic] has not established eligibility for relief on account of his political opinion, specifically his refusal to respond to a notice that he had been drafted to serve in the Army. This fear is no longer objectively reasonable, given the drastic changes in country conditions." (JA 114; citation omitted) The BIA concluded as follows:

6

> [W]e find that the presumption of future persecution has been overcome and [Alibasic] has not demonstrated a well-founded fear of future persecution in Serbia and Montenegro on account of a protected ground. . . . Since [Alibasic] has failed to satisfy the lower burden of proof required for asylum, he has also failed to satisfy the higher, clear probability standard of eligibility required for withholding of removal.
>
> Finally, after a review of the record of proceedings, we find that there is no support for the conclusion that [Alibasic] has been or would likely be tortured by or with the acquiescence of a government official in Serbia and Montenegro. Therefore, [Alibasic] is not eligible for relief under [CAT].
>
> Accordingly, the following order shall be entered.
>
> ORDER: The Immigration Judge's December 13, 2004 decision granting asylum is vacated.
>
> FURTHER ORDER: This matter is remanded to the Immigration Judge in order to allow for consideration of any additional available relief including voluntary departure. (JA 114; citations omitted)

Alibasic filed a timely petition for review of the BIA's order. Before it responded to Alibasic's appeal on the merits, the Government filed a motion to dismiss based upon the contention that "this Court does not have jurisdiction to review the [BIA's] August 3, 2006 decision because Alibasic's administrative proceedings are currently pending and incomplete, and there is no final order." Respondent's Brief at 2 (footnote omitted).

**ANALYSIS**

**A. Jurisdiction.**

We first consider the Government's motion to dismiss. "[T]his Court has jurisdiction to review only petitions for review of <u>final</u> orders of removal." <u>Zhao Quan Chen v. Gonzales</u>, 492

F.3d 153, 155 (2d Cir. 2007) (per curiam) (citing 8 U.S.C. Section 1252(d)).  The question before us is whether the BIA's remand to the IJ "for consideration of any available relief including voluntary departure" constitutes a final order.

We hold that on the authority of our decision in Lazo v. Gonzales, 462 F.3d 53 (2d Cir. 2006) (per curiam), cert. denied, 127 S. Ct. 2909 (2007), the Government's motion should be denied.  In Lazo, this Court held that "the statutory requirement of an order of removal is satisfied when . . . the IJ either orders removal or concludes that an alien is removable."  Id. at 54  The IJ recognized that Alibasic was removable under 8 U.S.C. Section 1182(a)(6)(A)(I) as "[a]n alien present in the United States without being admitted or paroled," because Alibasic had conceded the allegations of the Notice to Appear that stated he was not a citizen of the United States and that he was not admitted or paroled, and he had admitted the charge of removability.  (JA 155)  The IJ went on to find, however, that based upon her review of the 2004 Country Report, Alibasic was eligible for asylum based upon "incidents of societal violence and discrimination against religious minorities," such as Albanian Muslims within Serbia.  It is this latter finding that the BIA overturned, holding that its review of the same Country Report demonstrated that "drastic changes in country conditions" rendered Alibasic's fear of persecution "no longer objectively reasonable."  The IJ's underlying finding of removability based on Alibaic's concessions therefore still stands and, under Lazo, the BIA has simply "removed an impediment to the removal that was ordered by the IJ."  462 F.3d at 54.  The IJ's initial finding of removability is therefore a final order of removal which affords this Court jurisdiction to hear the instant appeal.

This conclusion is not altered by our recent decision in Rhodes-Bradford v. Keisler, 507

8

F.3d 77 (2d Cir. 2007). In that case, the BIA reversed an IJ's finding that removal proceedings against an alien should be terminated because the alien's conviction for first-degree larceny did not render him removable as an alien convicted of an aggravated felony. Id. at 79. The BIA ordered that the alien was removable, but this Court vacated that order because "the BIA does not have the authority to issue removal orders in the first instance." Id. at 81 (emphasis added). We then dismissed the appeal because "the absence of a valid final order [of removability] means that we do not have jurisdiction to reach [the alien's] challenge to the BIA's determination that his larceny conviction constituted an aggravated felony under the INA." Id. at 82. This is plainly distinguishable from the instant case where an IJ's finding of removability has been left intact by the BIA's decision.

We are also not swayed by the Government's argument that because the BIA remanded the case to the IJ to consider voluntary departure, there is no final order for our review, and we therefore lack jurisdiction to hear this petition. As we do today, other Circuits have answered in the negative the question of whether a BIA order remanding the case to the IJ for consideration of voluntary departure renders that BIA decision non-final so as to deprive the circuit court of jurisdiction. See e.g., Saladarriaga v. Gonzales, 402 F.3d 461, 465 n.2 (4th Cir. 2005) (joining Sixth, Ninth, and Eleventh Circuits to conclude that "a BIA order denying relief from deportation, but remanding case for voluntary departure proceedings, or other subsidiary determinations, is immediately appealable"). The Ninth Circuit found it proper for a petitioner to appeal from the BIA's order requiring his removal, rather than the IJ's subsequent decision granting him voluntary departure, because "there was nothing pending before the Board and the petitioner had no reason or basis for appealing the Immigration Judge's decision in his favor."

9

Castrejon-Garcia v. INS, 60 F.3d 1359, 1361-62 (9th Cir. 1995). Similarly, the Eleventh Circuit took jurisdiction over an appeal of a BIA decision denying relief from removal, explaining that "[a]s all of the issues presented to us were subject to a final order by the BIA and there is nothing remaining for [the petitioner] to appeal as the only thing left for the IJ to determine is the country to which [he] will be removed, we find that the BIA's order constitutes a final order of removal." Del Pilar v. U.S. Att'y Gen., 326 F.3d 1154, 1157 (11th Cir. 2003) (per curiam). We find the reasoning of our sister Circuits to be persuasive. We hold, therefore, that a BIA order denying relief from removal and remanding for the sole purpose of considering voluntary departure is a final order of removal that this Court has jurisdiction to review.[5] All of the issues presented to us in this petition for review were subject to the BIA's order. It was proper for Alibasic to petition for review of that order without waiting for the IJ's decision regarding voluntary departure.

**B. The Merits of the Petition for Review.**

The IJ found that, as a matter of law, Alibasic was entitled for asylum. Although not explicitly stated in its opinion, we assume that the BIA properly followed applicable regulations and reviewed the IJ's decision pursuant to a de novo standard. See 8 C.F.R. Section 1003, I(d)(3)(ii). As we explain below, however, when the conduct of such review leads the BIA to conclude that an IJ's asylum determination should be reversed, the BIA cannot sustain this conclusion merely by pointing to aspects of the record before the IJ which support reversal. Rather, our precedents require the BIA's opinion to engage the IJ's asylum determination in

---

[5] We treat the BIA's remand to the IJ to be for the sole purpose of considering Alibasic's eligibility for voluntary departure, notwithstanding the BIA's direction that the IJ consider "any available relief including voluntary departure." Both parties were asked by this Court to address whether any forms of relief, other than voluntary departure, would be available to Alibasic. Neither party has identified to us any other forms of relief for which Alibasic would be eligible.

10

sufficient detail such that it is clear to a reviewing court: (1) why the portions of the record relied on by the IJ do not support the IJ's determination and (2) why the record as a whole supports reversal.

In order to be considered a refugee and therefore eligible for asylum, Alibasic must show that he has suffered past persecution on account of "race, religion, nationality, membership in a particular social group, or political opinion," or that he has a well-founded fear of future persecution on such grounds should he be ordered to return to his native country. See 8 U.S.C. § 1101(a)(42). As discussed above, the IJ found that Alibasic had suffered from persecution in the past and the BIA adopted this finding arguendo. Past persecution, however, is "rarely sufficient in itself to entitle an applicant to asylum," but it does "automatically give[] rise to a rebuttable presumption of a well-founded fear of future persecution . . . ." Poradisova v. Gonzales, 420 F.3d 70, 78 (2d Cir. 2005). The Government can defeat this presumption "if 'a preponderance of the evidence establishes that a change in circumstances in the applicant's country of nationality has occurred such that the applicant's fear is no longer well-founded.'" Id. (quoting Guan Shan Liao v. U.S. Dep't of Justice, 293 F.3d 61, 67 (2d Cir. 2002) (citing 8 C.F.R. Section 208.13(b)(1)(i)). A well-founded fear is "a subjective fear that is objectively reasonable. A fear is objectively reasonable even if there is only a slight, though discernible, chance of persecution." Tambadou v. Gonzales, 446 F.3d 298, 302 (2d Cir. 2006) (citations and internal quotation marks omitted).

Where, as here, the BIA vacates the decision of the IJ, we review only the decision of the BIA. See Yan Chen v. Gonzales, 417 F.3d 268, 271 (2d Cir. 2005). We will assume, however, that Alibasic was a credible witness because the IJ found him to be such and the BIA did not

11

disturb that finding. See id. at 271-72. We review the agency's factual findings under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We will, however, vacate and remand for new findings if the agency's reasoning or its fact-finding process was sufficiently flawed. See Cao He Lin v. U.S. Dep't of Justice, 428 F.3d 391, 406 (2d Cir. 2005). Thus, "[d]espite our generally deferential review of IJ and BIA opinions, we require a certain minimum level of analysis from the IJ and BIA opinions denying asylum, and indeed must require such if judicial review is to be meaningful." Poradisova, 420 F.3d at 77 (collecting cases).

Our review is further guided by the principle that "this Court is not ignorant of indisputable historical events." Xiao Xing Ni v. Gonzales, 494 F.3d 260, 272 (2d Cir. 2007). In the context of this case the indisputable events, as recognized by the IJ, are that "religion and ethnicity are intertwined closely throughout Serbia Montenegro [sic], which was always the case. That was the problem with the war, that is why people were being killed, because of their religion and ethnicity." (JA 162) We do not perceive that the Government would dispute this assessment. Rather, it is the Government's assertion that "[s]ubstantial evidence supports the [BIA's] conclusion that, whether or not Alibasic established past persecution in Serbia-Montenegro, conditions in that country have changed 'remarkably' since his departure in 1998, such that he does not have a well-founded fear of persecution if he returned there." Respondent's Brief at 21.

The core of Alibasic's argument to the contrary is a procedural one. That is, he contends that the BIA erred because "it took administrative notice of changed country conditions" and he

12

"was not provided with an opportunity to respond to their new findings in order to explain how the changes would affect his particular case." Petitioner's Brief at 26. Alibasic particularly relies upon Burger v. Gonzales, 498 F.3d 131 (2d Cir. 2007), in which the BIA reversed an IJ's grant of asylum to a Serbian alien. The BIA noted that, after the IJ's decision, the Milosevic government in Serbia had fallen, and because the petitioner's "claims rested on her anti-Milosevic views, [she] no longer had a well-founded fear of persecution." Id. at 133. This Court reversed and ruled that "where [as here] administratively noticed facts are the sole basis for the BIA's reversal of an IJ's grant of asylum," the BIA "err[s] by failing to give [the petitioner] advance notice of its intention to consider th[ese] extra-record fact[s]." Id. at 135.

As the Government correctly argues, however, "the [BIA] did not take administrative notice of changed country conditions, but rather, properly relied upon the evidence of record, including the contents of the United States Department of State's Country Report of 2004." Respondent's Brief at 24. Thus, Alibasic is not similarly situated with the petitioner in Burger because the BIA's sole reliance upon the record evidence before the IJ means that he was entitled to no prior notice as to the substance of the BIA's decision.

This does not end the matter, however, because we believe that this Court's recent decision in Niang v. Mukasey, 511 F.3d 138 (2d Cir. 2007), warrants the vacatur and remand of the BIA's decision in the instant case. In Niang, a petitioner from Mauritania was denied asylum by an IJ who made an adverse credibility finding because the petitioner had submitted allegedly forged documents and "the IJ did not believe that [the petitioner] was who he said he was." Id. at 144. The IJ also concluded, however, "that, assuming that [the petitioner] had suffered persecution in Mauritania, conditions there had not fundamentally changed such that his life or

13

freedom would no longer be threatened. The evidence from the State Department was conflicting; though there were some indications that people were returning, Mauritania still had 'a very bad human rights record.'" Id. The BIA affirmed the adverse credibility determination, but departed from the IJ's decision in that "the BIA seemed to say that even if [the petitioner's] account were true, he should be denied relief because 'the record indicates that the current situation in Mauritania has improved dramatically, lessening the likelihood of persecution.'" Id. at 149.

On appeal, this Court vacated the adverse credibility finding and, having done so, went on to consider the BIA's determination that changed country conditions warranted a denial of asylum. We held that "the BIA provided insufficient reasoning to support its finding of changed country conditions":

> The BIA's one-line statement that conditions in Mauritania have "improved dramatically" does not suffice as a holding that a fundamental change of circumstances occurred. True, our Court has held that "where . . . changed circumstances evidently prevail in a country that is the subject of an appreciable proportion of asylum claims . . . an [IJ] need not enter specific findings premised on record evidence when making a finding of changed country conditions under the INA." Hoxhallari v. Gonzales, 468 F.3d 179, 187 (2d Cir. 2006) (per curiam) (emphasis added). But we have since said that Hoxhallari stands for the "uncontroversial propositions that [i] this Court is not ignorant of indisputable historical events . . . and [ii] we will not assume the agency suffers from such ignorance." Xiao Xing Ni v. Gonzales, 494 F.3d 260, 272 (2d Cir. 2007).

> Clearly, no "indisputable historical event" supports the BIA's decision, where the IJ, relying on the very same record evidence, reached the opposite conclusion, and explained in detail his reasons for doing so. Since Hoxhallari does not apply, the normal requirements for a valid factual determination remain in force. The agency must provide a reasoned basis for its decision, Beskovic v. Gonzales, 467 F.3d 223, 227 (2d Cir. 2006), and must

14

> premise that decision on substantial evidence in the record,
> Tambadou v. Gonzales, 446 F.3d 298, 303-04 (2d Cir. 2006).
> Neither of these requirements is satisfied by a bald assertion that
> conditions in Mauritania have "improved dramatically."

Id.; see also Passi v. Mukasey, 535 F.3d 98, 103 (2d Cir. 2008) (finding that BIA "improperly inferred" that petitioner was not eligible for asylum "because its inference was based entirely on a country report that details general improvements," but also indicates that petitioner's hometown "is still troubled by ethnic and political conflict").

In our case, the BIA likewise identifies no "indisputable historical event" which compels a finding that the Alibasic will no longer face persecution should he return to his native country. Rather, "relying on the very same record evidence" as did the IJ, the BIA reached a dramatically different assessment than the IJ regarding country conditions in Serbia and Montenegro. Although the BIA's support for its assessment is more than "a one-line statement," it is not much more. We therefore do not think that the BIA has demonstrated that its decision is supported by "substantial evidence in the record," especially because it does not even address the evidence of continued persecution of Serbian minorities identified by the IJ in supporting materials submitted by Alibasic and in the 2004 Country Report itself. See Passi, 535 F.3d at 102(finding that BIA improperly failed to consider information favorable to petitioner "in the country report as well as several news articles submitted by" petitioner). We therefore conclude that the BIA failed "to conduct an individualized analysis of whether the changes in conditions in [Alibasic's homeland] were so fundamental that they are sufficient to rebut the presumption that [Alibasic's] fear of persecution is well-founded." Id. at 103-04; Tambadou, 446 F.3d at 304 (BIA improperly "did not engage in an individualized analysis beyond its general conclusions based on its over-

15

simplified reading" of country report).[6]

## C. Relief.

Because "[w]e cannot predict with confidence" that the BIA would again reverse the IJ's grant of asylum if it conducted a properly thorough review of the record evidence, we vacate the BIA's decision and remand so that such a review may be conducted. Niang, 511 F.3d at 149-150. We ask that, upon remand, the BIA be precise in stating the standards it is employing with respect to the IJ's decision such that, should a petition for review again be considered by this Court, we are not "compelled to guess at the theory underlying the BIA's action." Shi Liang Lin v. U.S. Dep't of Justice, 416 F.3d 184, 192 (2d Cir. 2005).

Further, we note that history has not stopped in the Balkans during the pendency of Alibasic's application for asylum. We have already made mention of Montenegro's declaration of independence, in 2006, from Serbia. See, supra, at 2, n.3. As we discussed with the parties during oral argument, international recognition of the predominantly Muslim Republic of Kosovo, in early 2008, may have some effect on how ethnic minorities are treated in the former Yugoslavia. See, e.g., Charles Simic, "The Troubled Birth of Kosovo," New York Review of

---

[6] Our conclusion is not altered by the fact that the BIA determined Alibasic's eligibility for asylum based upon its reading of a Country Report issued by the U.S. State Department. The Government correctly argues that "this Court has recognized" that these reports "are 'usually the best source of information on country conditions.'" Respondent's Brief at 23 (quoting Zamora v. INS, 534 F.2d 1055, 1062 (2d Cir. 1976)). More recently, however, we have cautioned against "excessive reliance" upon State Department reports, noting that "their observations do not automatically discredit contrary evidence presented by the applicant, and they are not binding on the immigration court. Thus, where a report suggests that, in general, an [applicant] would not suffer or reasonably fear persecution in a particular country," the immigration court is still "obligated to consider also any contrary or countervailing evidence with which it is presented, as well as the particular circumstances of the applicant's case as demonstrated by testimony and other evidence." Tian-Yong Chen v. INS, 359 F.3d 121, 130 (2d Cir. 2004) (internal citations omitted; emphasis in original).

16

Books, April 3, 2008, at 3. Since oral argument, the July 2008 capture and extradition of the accused Bosnian Serb war criminal, Radovan Karadzic, after a dozen years in hiding, has caused further speculation about the future state of inter-ethnic relations in the Balkans. See, e.g., Stefan Wagstyl and Neil Macdonald, "Breakthrough in the Balkans," Financial Times, July 26/27, 2008, at 8.

Because the record in this case has not been supplemented since the IJ's decision in December 2004, the implications of events that have occurred in the former Yugoslavia over the past four years for Alibasic's application for asylum – as to which we of course express no opinion – have received no agency consideration. Because we have cautioned against agency reliance upon "outdated" information "that may not [] accurately reflect[] the current conditions" of an applicant's homeland, Tambadou, 446 F.3d at 404, it would be troubling if, on remand, the agency did not avail itself of the opportunity to consider updated information. We therefore note that the filing of a motion to reopen upon remand in order to supplement the record with sufficiently current evidence is particularly appropriate in this case. See 8 U.S.C. § 1229a(c)(6)(C)(ii).

### CONCLUSION

We **GRANT** the petition for review, **VACATE** the decision of the BIA denying Alibasic's claims for asylum, withholding of removal, and CAT relief, and **REMAND** the case for further proceedings consistent with this opinion.