# United States Court of Appeals
## For the First Circuit

No. 09-1692

JOHANNES HAKIM,

Petitioner,

v.

ERIC H. HOLDER, JR.,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Circuit Judge,
Souter,[*] Associate Justice,
and Stahl, Circuit Judge.

Randall A. Drew, with whom Wiggin & Nourie, P.A., were on
brief for petitioner.
Greg D. Mack, Senior Litigation Counsel, U.S. Department of
Justice, Civil Division, Office of Immigration Litigation, with
whom Tony West, Assistant Attorney General, Civil Division, and
Terri J. Scadron, Assistant Director, were on brief for respondent.

July 9, 2010

---

[*]   The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**TORRUELLA, Circuit Judge.** Johannes Hakim ("Hakim") seeks review of the decision of the Board of Immigration Appeals ("BIA") reversing the grant of applications for asylum under Section 208 of the Immigration and Nationality Act ("INA") and for withholding of removal under Section 241(b)(3) of the INA. Hakim contends that the BIA erred when it determined that evidence of mistreatment he experienced in his native Indonesia failed to rise to the level of persecution within the meaning of the immigration laws. The government counters that we lack jurisdiction because we have not been presented with a final order of removal, and, in the alternative, that the Attorney General's issuance of a final rule on voluntary departure militates in favor of not finding a final order of removal. After careful consideration, we decline for prudential reasons to exercise jurisdiction in this case. Hakim's petition is thus dismissed without prejudice.

## I. Background

### A. Facts[1]

Hakim is an Indonesian citizen of Chinese ethnicity and Christian faith. In February of 1996, Hakim, who was fourteen years old at the time, was attacked by "a group of people" who identified him as Chinese and robbed him. One of the men struck Hakim with a block of wood, breaking his hand. Neither he nor his

---

[1] These facts are drawn from the petitioner's testimony before the Immigration Judge ("IJ"), which the IJ deemed "convincing[]." See Decky v. Holder, 587 F.3d 104, 107 n.2 (1st Cir. 2009).

parents reported the incident to the police, considering it a "waste" to file a report because the police would see that they were Chinese and would probably then ask them for money. Although Hakim testified as to other events, the February 1996 incident was, according to him, "the worst thing that happened" to him.

Hakim left Indonesia in 2001 and, the following year, applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

## B. Procedural History

Hakim left Indonesia on September 26, 2001. The next day he was admitted to the United States as a nonimmigrant B2 Visitor for Pleasure with authorization to remain in the United States for a temporary period not to exceed March 24, 2002. He overstayed, and on September 24, 2002, Hakim submitted applications for asylum, withholding of removal, and protection under the CAT to the Immigration and Naturalization Service ("INS"). Hakim's application was referred to the Immigration Court in Boston, Massachusetts.

On August 5, 2004, the Department of Homeland Security ("DHS") commenced removal proceedings against Hakim by filing a Notice to Appear ("NTA") with the Immigration Court alleging he had remained in the United States after March 24, 2002, without authorization, and was subject to removal. See 8 U.S.C. § 1227(a)(1)(B). Hakim admitted the allegations contained in the

-3-

NTA, conceded that he was removable, and renewed his requests for asylum, withholding of removal, and protection under the CAT.

Hakim testified before the IJ on August 3, 2006, and, on February 5, 2007, the IJ issued a decision granting his applications for asylum and withholding of removal. The IJ concluded that the evidence presented by Hakim warranted a finding that he suffered past persecution in Indonesia. Given the finding of past persecution and the DHS's inability to provide evidence that conditions in Indonesia had changed, the IJ held that the government had failed to meet its burden of proving that Hakim's fears of future persecution were not well-founded. See 8 C.F.R. § 208.13(b)(1) (stating that once the applicant has demonstrated past persecution, DHS has the burden of establishing by a preponderance of the evidence either "a fundamental change in circumstances" or the possibility of internal relocation). However, because Hakim "failed to establish he would be detained and subject to torture or that the government of Indonesia would acquiesce in that harm being inflicted upon him[,]" the IJ denied him protection under the CAT.

The government appealed to the BIA, which issued an opinion on April 24, 2009, reversing the IJ's grant of applications for asylum and for withholding of removal. The BIA rejected the IJ's conclusion that Hakim had established that he was a victim of past persecution. The BIA explained that the mistreatment

inflicted on Hakim in the February 1996 robbery was "reprehensible," but fell "outside the scope of the type of mistreatment considered to be persecution," and that "the other incidents of which he complained were [not] sufficiently severe, either cumulatively or in isolation, [nor] sufficiently related to an enumerated ground, to constitute persecution."[2]

Concluding that Hakim had failed to establish past persecution, the BIA disagreed with the IJ's conclusion that he should benefit from a presumption of future persecution. The BIA found that Hakim "did not persuasively articulate any specific basis on which he would be likely to be singled out for persecution[,]" and there was insufficient evidence "to support a conclusion that there is a pattern and practice of persecution against Christians or ethnically Chinese individuals in Indonesia." See also Decky, 587 F.3d at 113 ("We have repeatedly affirmed the BIA's determinations . . . that there is no ongoing pattern or practice of persecution against ethnic Chinese or Christians in Indonesia.") (citation omitted). The BIA also held that Hakim failed to present evidence demonstrating that he would not be able to relocate to another part of Indonesia. Given these

---

[2] In a claim for asylum, "the petitioner carries the burden of proving that he qualifies as a refugee by showing either that he has suffered past persecution or has a well-founded fear of future persecution on the basis of 'race, religion, nationality, membership in a particular social group, or political opinion.'" Journal v. Keisler, 507 F.3d 9, 12 (1st Cir. 2007) (quoting 8 U.S.C. § 1101(a)(42)).

-5-

determinations, the BIA concluded that Hakim failed to prove that he should be granted asylum, and thus the more stringent withholding of removal. As the IJ had not considered whether Hakim was eligible for voluntary departure, the BIA remanded the case to the IJ to make such a determination.

The IJ scheduled for January 14, 2010, a hearing to determine Hakim's eligibility for voluntary departure. On December 31, 2009, Hakim filed a motion for continuance before the IJ, which was granted on January 5, 2010. The IJ thus rescheduled the hearing date for July 22, 2010. Hakim currently seeks, in this Court, reversal of the BIA's decision on the merits.

## II. Discussion

### A. Standard/Scope of Review

Pursuant to 8 U.S.C. § 1252(d), we have jurisdiction to review final orders of removal only if both of the following conditions are met. First, "the alien [must have] exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1); see De Araujo v. Gonzales, 457 F.3d 146, 152 (1st Cir. 2006) ("This exhaustion requirement generally means that the BIA must first review an IJ's determination of [removability] before a petitioner may present his appeal to us.") (citation omitted). Second,

> another court [cannot have] decided the validity of the order, unless the reviewing court finds that the petition presents grounds that could not have been presented in the

> prior judicial proceedings or that the remedy provided by the prior proceeding was inadequate or ineffective to test the validity of the order.

8 U.S.C. § 1252(d)(2). That is, we lack jurisdiction to consider a petition raising arguments that a court has previously "considered and rejected" in a prior proceeding. Paul v. United States Dep't of Justice, 273 F. App'x 64, 65 (2d Cir. 2008); see Gittens v. Menifee, 428 F.3d 382, 386 (2d Cir. 2005) (finding that an alien's second petition for review would fail under § 1252(d)(2) when "a federal court has already ruled on the merits of his . . . argument").

The INA defines an "order of [removal]" as "the order of the special inquiry officer, or other such administrative officer to whom the Attorney General has delegated the responsibility for determining whether an alien is [removable], concluding that the alien is [removable] or ordering [removal]."[3] 8 U.S.C. § 1101(a)(47)(A) (emphasis added). Orders of removal become final upon "(I) a determination by the [BIA] affirming such an order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the [BIA,]" whichever is earlier. 8 U.S.C. § 1101(a)(47)(B).

---

[3] See Calcano-Martínez v. INS, 533 U.S. 348, 350 n.1 (2001)(noting that, in 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act, which replaced the term "deportation" with "removal"). The definitions section of the INA has not been revised to incorporate this change.

-7-

Without directly addressing 8 U.S.C. § 1101(a)(47), Hakim argues that the BIA's order remanding to the IJ to resolve the question of voluntary departure constitutes a final order of removal. He contends that, according to 8 U.S.C. § 1252(d)(1), we have jurisdiction because he has exhausted all administrative remedies in pursuit of his applications for asylum and withholding of removal, and another court has not decided the validity of the order. Furthermore, he contends that the only issue being considered on remand by the IJ is his eligibility for voluntary departure, not further review of his asylum or withholding of removal applications. In support of his argument, Hakim relies on a number of sister circuit cases, including Alibasic v. Mukasey, in which the Second Circuit held that "a BIA order denying relief from removal and remanding for the sole purpose of considering voluntary departure is a final order of removal that this Court has jurisdiction to review." 547 F.3d 78, 83-84 (2d Cir. 2008) ("The IJ's underlying finding of removability based on [the alien's] concessions [of removability] still stands and . . . the BIA has simply removed an impediment to the removal that was ordered by the IJ.") (internal quotation marks omitted); accord Saldarriaga v. Gonzales, 402 F.3d 461, 466 n.2 (4th Cir. 2005) ("[A] BIA order denying relief from deportation, but remanding the case for voluntary departure proceedings or other subsidiary determinations" is a final order of removal that is "immediately appealable."); Del

-8-

Pilar v. U.S. Att'y Gen., 326 F.3d 1154, 1157 (11th Cir. 2003) (per curiam) (finding that "the BIA's remand for the limited purpose of permitting [petitioner] to designate a country of removal" constituted a final order of removal); Castrejón-García v. INS, 60 F.3d 1359, 1361-62 (9th Cir. 1995) (finding that the BIA's order reversing the grant of suspension and remanding to the IJ for a determination of voluntary departure was a final order of removal); Perkovic v. INS, 33 F.3d 616, 619 (6th Cir. 1994) ("We are aware of no authority for the proposition that a [BIA] order rejecting an asylum application is not a final order unless a formal order of deportation has already been issued.").

Despite the IJ having awarded asylum and withholding of removal to Hakim, the government argues that the IJ did not issue an order of removal, but merely noted that Hakim had conceded that he was removable. But see Chupina v. Holder, 570 F.3d 99, 104 (2d Cir. 2009) ("[A]n award of withholding of removal requires entry of an underlying 'order of removal.'") (citation omitted). The government further argues that the Attorney General's issuance in 2008 of a final rule amending the regulation regarding voluntary departure militates in favor of finding that the BIA did not issue a final order of removal. See Voluntary Departure: Effect of a Motion to Reopen or Reconsider or a Petition for Review, 73 Fed. Reg. 76,927, 76,937 (Dec. 18, 2008) (to be codified at 8 C.F.R. §§ 1240-1241, as relevant 1240.26(i)). Under that new voluntary

departure regulation, effective as of January 20, 2009, "any grant of voluntary departure shall terminate automatically upon the filing of the petition [for review] and the alternate order of removal[, which shall be entered upon granting a request made for voluntary departure,] . . . shall immediately take effect."  8 C.F.R. § 1240.26(d), (i).  The decisions of our sister circuits -- finding that a BIA order denying  relief from removal and remanding for voluntary departure is a final order of removal -- were issued before this current voluntary departure regulation, and thus did not take it into consideration.

### B.  Voluntary Departure

Voluntary departure is a discretionary form of relief. Chi v. Holder, --- F.3d ---, 2010 WL 2089478 at *1 (1st Cir. May 26, 2010).  Voluntary departure is available (1) in lieu of or prior to the completion of removal proceedings or (2) at the conclusion of removal proceedings.  8 U.S.C. § 1229c(a)(1), (b)(1). An IJ may grant voluntary departure at the conclusion of a removal proceeding if she finds that: (i) "[t]he alien has been physically present in the United States for [a] period of at least one year preceding the date the [NTA] was served"; (ii) "[t]he alien is, and has been, a person of good moral character for at least five years immediately preceding the application"; (iii) "[t]he alien has not been convicted of [an aggravated felony] and is not deportable [on security grounds]"; and (iv) "[t]he alien has established by clear

-10-

and convincing evidence that the alien has the means to depart the United States and has the intention to do so." 8 C.F.R. § 1240.26(c)(1). The Supreme Court has described this relief as

> an agreed-upon exchange of benefits, much like a settlement agreement. In return for the anticipated benefit, including the possibility of readmission, an alien who requests voluntary departure represents that he or she "has the means to depart the United States and intends to do so" promptly. Included among the substantive burdens imposed upon the alien when selecting voluntary departure is the obligation to arrange for departure, and actually depart, within the 60-day period.

Dada v. Mukasey, 554 U.S. 1, 32 (2008) (citations omitted).

The Supreme Court has not resolved the issue of whether the federal courts of appeals have the authority to grant a motion to stay the voluntary departure period pending consideration of a petition for review on the merits. See id. at 18. Our circuit has held that we have the authority "to suspend the running of an unexpired voluntary departure period while a petition for judicial review is pending[,]" Bocova v. Gonzales, 412 F.3d 257, 268 (1st Cir. 2005), and while several of our sister circuits are in accord, at least one disagrees. Compare Thapa v. Gonzales, 460 F.3d 323, 332 (2d Cir. 2006) (finding that the court may stay voluntary departure pending consideration of a petition for review on the merits), Obale v. Ashcroft, 453 F.3d 151, 157 (3d Cir. 2006) (same), Lopez-Chavez v. Ashcroft, 383 F.3d 650, 654 (7th Cir. 2004) (same), Rife v. Ashcroft, 374 F.3d 606, 616 (8th Cir. 2004) (same),

-11-

Nwakanma v. Ashcroft, 352 F.3d 325, 427 (6th Cir. 2003) (same), and
Himri v. Ashcroft, 344 F.3d 1261, 1262 (9th Cir. 2003) (same), with
Ngarurih v. Ashcroft, 371 F.3d 182, 194 (4th Cir. 2006) (finding
that the court may not stay the voluntary departure period pending
consideration of a petition for review). In response to the
divergent federal practice and pursuant to 8 U.S.C. § 1229c(e), the
Attorney General subsequently issued a final rule on December 18,
2008. See Voluntary Departure: Effect of a Motion to Reopen or
Reconsider or a Petition for Review, 73 Fed. Reg. at 76,937-38.
That rule amended the voluntary departure regulation, which now, in
part, provides that a grant of voluntary departure on or after
January 20, 2009, automatically terminates with the filing of a
petition for review. 8 C.F.R. § 1240.26(i).

### C. Analysis

Assuming arguendo that we have before us a final order of
removal,[4] we still decline to exercise jurisdiction in this case
for prudential reasons. We thus need not address whether a BIA
order denying relief from removal and remanding for consideration
of voluntary departure is a final order of removal.

---

[4] As discussed previously, a number of our sister circuits have
held that a BIA order denying relief from removal and remanding for
consideration of voluntary departure is a final order of removal.
See Alibasic, 547 F.3d at 83-84; Saldarriaga, 402 F.3d at 466 n.2;
Del Pilar, 326 F.3d at 1157; Castrejón-García, 60 F.3d at 1361-62;
Perkovic, 33 F.3d at 619.

-12-

On its face, the current voluntary departure regulation reflects the Attorney General's intention to limit a petitioner's eligibility for voluntary departure where the petitioner has sought judicial review, and to ensure uniformity in the administration of the immigration laws. The current voluntary departure regulation has thus altered the decision-making process for a petitioner interested in seeking judicial review of her petition: as of January 20, 2009, she must elect either voluntary departure <u>or</u> judicial review of her petition.

The automatic termination provision of the current regulation assumes a chronological order, i.e., that the grant of voluntary departure <u>precedes</u> the filing of a petition for judicial review. In the instant case, Hakim filed a petition for judicial review <u>before</u> the IJ has been afforded the opportunity to determine Hakim's eligibility for voluntary departure, and thus the regulation does not directly address the case at hand. By exercising jurisdiction in this case, we would be permitting Hakim to circumvent the regulation by allowing him to seek both voluntary departure and judicial review, thus hindering judicial economy and denying the government the benefit of "a prompt and costless departure." <u>See</u> <u>Dada</u>, 554 U.S. at 32-33. To prevent such a result, we think it wiser, for prudential reasons, to remand the case to the IJ so that she can decide whether to grant Hakim voluntary departure. <u>Cf.</u> <u>Liu</u> v. <u>United States Dep't of Justice</u>,

-13-

455 F.3d 106, 116-17 (2d Cir. 2006) (concluding that, "as a matter of discretion," it was "prudent and useful" to remand to the BIA to resolve a question of first impression).  If Hakim is granted voluntary departure, he can at that point decide whether to comply with the relevant departure provisions, 8 U.S.C. § 1229c(b), or else to file a petition for judicial review of his applications for asylum and withholding of removal.

### III. Conclusion

In sum, we will not review the merits of Hakim's claim because we decline, for prudential reasons, to exercise jurisdiction at this time.  Accordingly, his petition seeking review of the BIA's determination that he was not eligible for asylum or withholding of removal is dismissed without prejudice.

**Dismissed**.