**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

QINGYUN LI,

*Petitioner,*

v.

ERIC H. HOLDER, JR., Attorney
General,

*Respondent.*

No. 10-2333

On Petition for Review of an Order of the
Board of Immigration Appeals.

Argued: October 27, 2011

Decided: December 2, 2011

Before WILKINSON, SHEDD, and AGEE, Circuit Judges.

Petition dismissed without prejudice by published opinion.
Judge Agee wrote the opinion, in which Judge Wilkinson and
Judge Shedd joined.

**COUNSEL**

**ARGUED:** Yueh-Mei Wu Rowan, ROWAN & ASSO-
CIATES, P.C., Fairfax, Virginia, for Petitioner. Daniel Eric
Goldman, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Respondent. **ON BRIEF:** Tony West,
Assistant Attorney General, Civil Division, William C.

Peachey, Assistant Director, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

**OPINION**

AGEE, Circuit Judge:

I.

Qingyun Li, the petitioner in this case, seeks review of an order of the Board of Immigration Appeals ("BIA") remanding her case to the Immigration Judge ("IJ"). The government urges us to dismiss for lack of jurisdiction. As discussed below, we conclude that this court has jurisdiction over the petition, but nonetheless decline to exercise that jurisdiction for prudential reasons. Accordingly, we dismiss the petition without prejudice to Li's right to seek review at a later time.

II.

Li, a native and citizen of the Republic of China, illegally entered the United States in August 1998. She subsequently applied for adjustment of status based on an approved I-140 visa petition filed by her employer. After proceedings not relevant to this appeal, the Department of Homeland Security ("DHS") denied her application, and on July 27, 2007, the DHS served her with a Notice to Appear. The Notice charged Li with removability as an alien present in the United States without being admitted or paroled. Before the IJ, Li conceded that she was removable as charged and renewed her application for adjustment of status. On April 27, 2009, the IJ found Li removable as charged, denied her application for adjustment of status, and granted her the privilege of voluntary departure with an alternate order of removal to China.

On October 28, 2010, the BIA upheld the denial of Li's application for adjustment of status and dismissed her appeal from the IJ's decision.[1] Finding that the IJ failed to provide Li "with the required advisals," however, the BIA remanded "for the Immigration Judge to grant a new period of voluntary departure and to provide the required advisals." (J.A. 24.) The BIA's opinion concluded by stating that the "record is remanded for further proceedings consistent with the foregoing opinion and for the entry of a new decision." (J.A. 24.) Li filed a timely petition for review with this Court.

The government contends that this Court lacks jurisdiction over Li's petition, an argument that we squarely reject based on prior precedent that is binding on our panel and undisturbed by any intervening Supreme Court decision. However, following the approach employed by the First and Sixth Circuits in similar circumstances, we nonetheless dismiss the petition without prejudice for prudential reasons.

### III.

### A.

This Court reviews legal questions, such as the existence of its own jurisdiction, de novo. *Kporlor v. Holder*, 597 F.3d 222, 225 (4th Cir. 2010). In this case, the government asks us

---

[1]The reasoning of the IJ and the BIA with regard to Li's adjustment application was as follows: Li's otherwise valid I-140 petition was automatically revoked when the petitioning employer went out of business, based on 8 C.F.R. § 205.1(a)(3)(iii)(D). Because she had no valid I-140 petition, she was not eligible to adjust status. Because that finding disposed of her adjustment application, the BIA did not address the IJ's conclusion that Li was not permitted to change employers under the portability provision in section 204(j) of the Act, 8 U.S.C. § 1154(j). Thus, the analysis of Li's claim for adjustment of status turns on the interplay, if any, of the automatic revocation regulation and the portability statute. Because we decline to exercise jurisdiction at this time, we express no opinion on the merits of Li's petition.

to hold that we lack jurisdiction over a BIA order remanding for a grant of voluntary departure because it is not a final order of removal. Two prior decisions of this Court, however, have held that BIA orders substantially identical to the instant one are final and immediately appealable.

First, in *Saldarriaga v. Gonzales*, 402 F.3d 461 (4th Cir. 2005), the government argued that there was no final order of removal under 8 U.S.C. § 1252(c)(1) where the BIA ordered removal, but remanded to the IJ to allow the petitioner an opportunity to apply for voluntary departure. *Id.* at 465 n.2. The Court rejected this argument and found the order immediately appealable, citing to decisions of the Eleventh, Ninth and Sixth Circuits with "persuasive" reasoning on the issue. *Id.*; *see also Del Pilar v. United States Attorney General*, 326 F.3d 1154, 1156-57 (11th Cir. 2003) (an order of removal was a final appealable order, despite the fact that the BIA was remanding to the Immigration Judge for the limited purpose of permitting Del Pilar to designate a country of removal); *Castrejon-Garcia v. INS*, 60 F.3d 1359, 1361-62 (9th Cir. 1995) (BIA order reversing an IJ's grant of suspension of deportation and remanding the case "for a determination of voluntary departure in lieu of deportation" was a final order of deportation); *Perkovic v. INS*, 33 F.3d 615, 618-19 (6th Cir. 1994) (BIA order reversing an IJ's grant of asylum and remanding the case was a final order of deportation).

Similarly, in *Perez-Vargas v. Gonzales*, 478 F.3d 191 (4th Cir. 2007), the Court relied on *Saldarriaga* in holding that a BIA order denying relief from removal but remanding the case to the IJ to determine an alien's eligibility for voluntary departure is a final order of removal conferring jurisdiction. *Id.* at 194 n.4.

This Court's prior decisions in *Saldarriaga* and *Perez-Vargas* are binding on this panel. *United States v. Collins*, 415 F.3d 304, 311 (4th Cir. 2005) ("[a] decision of a panel of this court becomes the law of the circuit and is binding on other

panels"). Those decisions plainly address the jurisdictional issue here, and compel the conclusion that we have jurisdiction over Li's petition.

The government, however, urges this Court to reconsider its holdings in *Saldarriaga* and *Perez-Vargas* in light of "intervening legal developments," specifically, the Supreme Court's decision in *Dada v. Mukasey*, 554 U.S. 1 (2008) and the promulgation of 8 C.F.R. § 1240.26.[2] A prior panel's decision may be overruled by "a superseding contrary decision of the Supreme Court." *Collins*, 415 F.3d at 311 (citing *Etheridge v. Norfolk & W. Ry. Co.*, 9 F.3d 1087, 1090 (4th Cir. 1993)). In *Etheridge*, this Court determined that a subsequent Supreme Court decision "specifically rejected the reasoning on which [the prior decision] was based" and thus, the prior decision was "no longer controlling." 9 F.3d at 1090-91.

The question here, then, is whether *Dada* specifically rejected the reasoning on which the prior panel decisions were based which, in turn, were based on the out-of-circuit authority. Although the rationale of *Dada*, as well as the new regulation, may impact this case's ultimate disposition, *Dada* did not "specifically reject[ ] the reasoning," *see Etheridge*, 9 F.3d at 1090-91, on which *Saldarriaga* and *Perez-Valdez* were based, either expressly or implicitly.

In *Dada*, the Supreme Court discussed the nature of a voluntary departure arrangement between an alien and the government, describing it as "an agreed-upon exchange of benefits, much like a settlement agreement. In return for anticipated benefits, including the possibility of readmission,

---

[2]This regulation took effect January 20, 2009, *see* 8 C.F.R. § 1240.26, and applies to departure orders issued on or after the effective date. *Dada*, 554 U.S. at 20. The government argues that it applies to Li's case and we agree. The IJ's initial voluntary departure order was issued on April 27, 2009, after the effective date of the regulation, and any order issued on remand (if considered the operative order) would also be after the effective date.

an alien who requests voluntary departure represents that he or she 'has the means to depart the United States and intends to do so' promptly." *Id.* at 19 (citing 8 U.S.C. § 1229c(b)(1)).

The alien in *Dada* made a voluntary departure arrangement, and then two days before the expiration of the departure period, sought to withdraw his request for voluntary departure and filed a motion to re-open removal proceedings based on "new and material evidence." 554 U.S. at 6-7. The BIA denied the motion to reopen on the ground that petitioner had overstayed his voluntary departure period. Relying on 8 U.S.C. § 1229c(d), the BIA concluded that an alien who fails to voluntarily depart in a timely fashion "is statutorily barred from applying for and receiving certain forms of discretionary relief, including adjustment of status." *Id.* at 7. It did not rule on petitioner's motion to withdraw the voluntary departure request.

The Supreme Court disagreed with the BIA's conclusion. Instead, the Court held that the proper way to protect both the agreed-upon exchange of benefits that voluntary departure constitutes and the alien's statutory right to file a motion to reopen is to allow an alien to withdraw the request for voluntary departure before expiration of the departure period. Pursuant to this approach, an alien may agree to voluntary departure, but unilaterally withdraw the request before expiration of the departure period and pursue instead a motion to reopen. *Id.* at 20-21. If the alien pursues such a motion, he "gives up the possibility of readmission and becomes subject to the IJ's alternate order of removal." *Id.* at 21. The Court also noted that this is the approach taken in the regulation relied upon by the government in the instant case, 8 C.F.R. 1240.26. *See id.* at 20.

The new regulation, moreover, requires as a condition to being granted voluntary departure prior to completion of removal proceedings, that the petitioner "waive[ ] appeal of all issues." 8 C.F.R. § 1240.26(b)(1)(i)(D). The regulation

also dictates that the filing of a petition for review "or any other judicial challenge to the administratively final order" results in the automatic termination of the grant of voluntary departure and that "the alternate order of removal . . . shall immediately take effect." 8 C.F.R. § 1240.26(i). As noted, the regulation is applicable to Li. *See supra* at n. 2.

In determining whether *Dada* effectively overruled *Saldarriaga* and *Perez-Vargas*, it is of course significant that *Dada* did not address the jurisdictional issue here. Indeed, *Dada* was not tasked with deciding *any* jurisdictional question, and thus clearly did not explicitly overrule the jurisdictional holdings of *Saldarriaga* and *Perez-Valdez*. Nor did *Dada* reject the reasoning for the jurisdictional holdings of those cases. The assertion of jurisdiction in this Court's prior precedent (and the three out-of-circuit cases on which this Court relied) is based on the fact that a final order of removal (or its functional equivalent, such as the denial of adjustment at stake here) is an appealable order, even if the details of a voluntary departure remain to be worked out. The government is correct that *Dada* holds an alien can be forced to choose (at least within the voluntary departure period) between voluntary departure and the right to file for administrative relief, but *Dada* does not address—let alone reject—the reasoning of our prior cases so as to render them non-binding on us.

### B.

Having concluded that we have jurisdiction, we now turn to the government's alternative argument, in which it urges us to follow the approach of the First and Sixth Circuits in similar circumstances. Specifically, in post-*Dada* decisions, those courts determined that the exercise of jurisdiction would be inconsistent with the scheme envisioned by *Dada* and the new regulation and thus declined to exercise jurisdiction for "prudential reasons." *Hakim v. Holder*, 611 F.3d 73, 79 (1st Cir. 2010); *Giraldo v. Holder*, 654 F.3d 609, 610, 616 (6th Cir. 2011).

In *Hakim*, the First Circuit held that judicial review of a BIA decision following remand to the IJ for voluntary departure consideration would be premature and for "prudential reasons" declined to exercise jurisdiction. 611 F.3d at 79. The BIA decision at issue in *Hakim* reversed the IJ's grant of Hakim's application for asylum and withholding of removal and remanded to the IJ to determine whether Hakim qualified for voluntary departure consideration.

In electing not to assert jurisdiction, the *Hakim* court interpreted the new regulations as "assum[ing] a chronological order, *i.e.*, that the grant of voluntary departure *precedes* the filing of a petition for judicial review." *Id.* (emphasis in original). Thus, to allow juridical review to occur while an alien's request for voluntary departure remained pending before the IJ would permit the alien to circumvent the intent of the regulation and the rationale of *Dada*, whereby an alien may seek voluntary departure *or* post-order relief, but not both. Judicial review would also deprive the government of the benefit it received in agreeing to voluntary departure – "a prompt and costless departure." *Id.* (citing *Dada*, 554 U.S. at [19-20]).

More recently, our colleagues in the Sixth Circuit adopted the same approach in *Giraldo*, 654 F.3d 609. In that case, the alien and her minor daughter petitioned for review of a BIA order which had vacated the IJ's order granting withholding of removal and remanded to allow petitioner to apply for voluntary departure. *Id.* at 610. After concluding that it had jurisdiction to review the BIA's order, the Sixth Circuit agreed with the *Hakim* court's conclusion that it was "more prudent to decline to exercise jurisdiction at this time." *Id.* at 616, 618. As it noted, "[i]f Petitioners are granted voluntary departure, they 'can at that point decide whether to comply with the relevant departure provisions, 8 U.S.C. § 1129c(b), or else to file a petition for judicial review' of their application for withholding of removal." *Id.* (citing *Hakim*, 611 F.3d at 79).

We recognize, as did the *Hakim* and *Giraldo* Courts, that *Dada* and the new voluntary departure regulation modify the landscape governing voluntary departures. An alien is now permitted to withdraw from a voluntary departure agreement to pursue a motion to reopen. If the alien makes the "hard choice" to do so, however, the benefits of voluntary departure will no longer be available. *Dada*, 554 U.S. at 21. Thus, an alien is now required to choose between those two alternatives, *i.e.*, pursuing a motion to reopen (or a judicial challenge), or voluntarily departing. The new regulation, additionally, specifically compels an alien to choose between voluntary departure and seeking judicial review. 8 C.F.R. § 1240.26(b)(i)(D) (allowing grant of voluntary departure prior to completion of removal proceedings only if the alien "[w]aives appeal of all issues"); 8 C.F.R. § 1240.26(i) ("any grant of voluntary departure shall terminate automatically upon the filing of [a petition for review] or other judicial challenge").[3]

An order in this case dismissing Li's petition without prejudice would be consistent with the regulation and *Dada*, because after remand to the IJ (assuming no factual circumstances have changed that would allow Li to avoid removability), a voluntary departure date would be set. At that point, Li would be faced with the same choice that all aliens with the option of voluntary departure (and subject to the new regulation) face. *See* 8 C.F.R. § 1240.26(i) (setting forth the available options, among which Li will have to choose).

If we were to review Li's petition at this juncture, however, she would be spared having to make that "hard choice." *See*

---

[3]As described at oral argument, the regulation also allows a third option in cases where an IJ enters a voluntary departure order, which is to file a petition for judicial review of the BIA's decision, but then leave the country within 30 days. If an alien elects this option (and complies with certain other notification requirements), she will not be deemed to have departed under an order of removal. *See* 8 C.F.R. § 1240.26(i).

*Dada*, 554 U.S. at 21. Instead, she would be permitted to both challenge the removal order (before the BIA and this Court) and, in the event that she loses on that issue, to go back to the IJ for a voluntary departure order and receive the benefit of that arrangement. Thus Li would be placed in a more favorable situation than other aliens similarly situated. It is this result that is inconsistent with both *Dada* and the new regulation. Thus, we agree with the approach followed by the First and Sixth Circuits, and prudentially decline to exercise our jurisdiction over Li's petition.

Li argues that we should instead follow the Ninth Circuit's decision in *Pinto v. Holder*, 648 F.3d 976 (9th Cir. 2011), which concluded it had jurisdiction over the petition for review of a similar BIA order and chose to exercise that jurisdiction. We decline to follow *Pinto* for the reasons set forth above, but also because it is materially distinguishable on its facts. Significantly, 8 C.F.R. § 1240.26 did not apply in *Pinto* because the alien filed his petition for review three years prior to the regulation's effective date. *Id.* at 985; *see also id.* at 983 ("the new regulation is not directly applicable to Pinto's petition because it was not in force when Pinto petitioned for review"). Indeed, the *Pinto* court itself recognized this as a critical distinction between the case before it and *Hakim. Id.* at 985. Unlike the petitioner in *Pinto*, however, Li's petition for review was filed after the regulation's effective date, and both the prior order from the IJ granting voluntary departure, and any subsequent order, are subject to the new regulation. *See supra* at note 2.

The *Pinto* court also noted that, regardless of the effective date, the regulation by its terms did not apply to Pinto's situation because it "addresses only those cases in which an alien files a petition for review *after* that alien has been granted voluntary departure." *Id.* at 984 (emphasis in original). Pinto had filed a petition for review before any voluntary departure order had ever been entered.

By contrast, Li was granted voluntary departure and then filed a petition for review, the order of events anticipated by the regulation. It is solely because the "required advisals" were not properly given that her case is being remanded for a *new* voluntary departure order. Notably, the *Pinto* court rejected the *Hakim* court's approach in part because of this:

> [t]he regulation plainly does not require immigrants to forgo a petition for review before they have been granted voluntary departure, so we decline to follow the First Circuit and effectively force immigrants to choose between judicial review and the hope of voluntary departure. *Dada* similarly refused to make immigrants choose between accepting voluntary departure and the possibility of a motion to reopen.

*Pinto*, 648 F.3d at 985.

In this case, unlike in *Pinto* and alleviating the *Pinto* Court's concern, it is not the "hope of voluntary departure" that Li will be choosing after remand, *cf. id.*, but voluntary departure. The IJ has already determined she is eligible, and it is only because the IJ did not properly warn her of the consequences of such a choice pursuant to the new regulation that a new voluntary departure order would be set on remand. Indeed, the government acknowledged at oral argument that it was "assured" that Li would be offered voluntary departure when she appeared again before the IJ, based on both the BIA's decision and this Court leaving that decision undisturbed. (Tr. of October 27, 2011 Oral Arg. at 21:57-22:32.) Thus, this case also differs from *Pinto* in that there the petitioner had only "the hope of voluntary departure," while Li is entitled to it.

For all of these reasons, we prudentially decline to exercise jurisdiction over Li's petition at this time.[4] We deny it without

---

[4]We recognize that the general rule is that federal courts have an "obligation . . . to exercise the jurisdiction given them." *Colo. River Water*

prejudice, however, to Li's later ability to file for review of the issues raised in the BIA's order should that be her choice after receiving the new voluntary departure date.[5]

## IV.

For the foregoing reasons, we dismiss the petition without

---

*Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). However, various prudential doctrines allow courts to decline to exercise jurisdiction in limited circumstances (the abstention doctrines, ripeness, etc.). As the First and Sixth Circuits have recognized in similar situations, we believe that the unusual facts presented, combined with the deference we owe to the goals of the regulatory process, have created circumstances that are analogous to those justifying abstention in other cases.

[5]The *Pinto* Court was concerned about whether judicial review would be available later to Pinto if the court declined to exercise jurisdiction. Indeed, it criticized the *Hakim* Court on this ground:

> [I]n [declining jurisdiction], the [*Hakim*] court ignored the 30-day deadline for petitioning for review of final orders, which in our circuit can begin well before the grant of voluntary departure. The First Circuit did not explain how it could assert jurisdiction over Hakim's petition for review on the merits if he was denied voluntary departure (or decided not to accept voluntary departure if it were granted) and sought to renew juridical review.

648 F.3d at 985.

At oral argument in this case, however, the government disagreed that Li would be later barred from challenging before this Court the merits issue she raises in this appeal, *i.e.*, that the IJ's decision denying her adjustment of status was erroneous. Counsel for the government offered a procedural mechanism that would allow Li to later seek such judicial review of the adjustment decision (*i.e.*, the portability decision). Specifically, counsel explained that the BIA could reissue its decision to restart the 30-day period for filing a petition for review. Such a reissue would be appropriate because, although Li has timely and properly raised the issue before this Court, we have declined to address it purely for prudential reasons and without prejudice. Of course, as counsel for the government noted during argument, Li's circumstances prior to her new hearing before the IJ might well change, and result in a new application for relief from removal, which could potentially moot the issue she raises in this appeal.

prejudice.

*PETITION DISMISSED WITHOUT PREJUDICE*