# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

RICARDO CISNEROS-RESENDIZ,
*Defendant-Appellant.*

No. 10-50521

D.C. No.
3:10-cr-00407-JLS-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Janis L. Sammartino, District Judge, Presiding

Argued and Submitted
July 15, 2011—Pasadena, California

Filed September 6, 2011

Before: Pamela Ann Rymer, Richard C. Tallman, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

16881

**COUNSEL**

Douglas Keehn, Assistant U.S. Attorney, San Diego, California for appellee United States of America.

Vincent J. Brunkow, Esquire, San Diego, California for appellant Ricardo Cisneros-Resendiz.

**OPINION**

IKUTA, Circuit Judge:

Ricardo Cisneros-Resendiz (Cisneros) challenges his conviction for illegal reentry after removal, in violation of 8 U.S.C. § 1326, on the ground that the removal order on which the conviction was based was invalid. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I

Cisneros is a native and citizen of Mexico. He was brought to the United States by his parents at the age of ten and spent much of his youth in the San Diego area.

On January 5, 2006, Cisneros attempted to enter the United States at the San Ysidro port of entry, falsely claiming he was a U.S. citizen. Because a San Diego County warrant for Cisneros's arrest was outstanding, the Department of Homeland Security (DHS) turned him over to state officials. Cisneros was subsequently convicted of possession of methamphetamine. After completing his state jail sentence, Cisneros was returned to DHS custody.

On February 17, 2006, DHS issued a Notice to Appear (NTA) alleging that Cisneros was inadmissible and subject to removal because he was an arriving alien who had applied for admission to the United States by an oral false claim to United States citizenship and had been convicted of a drug offense. On the basis of these allegations, the NTA charged Cisneros with being inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II),[1] 1182(a)(6)(C)(ii),[2] and 1182(a)(7)(A)(i)(I).[3] At a removal hearing on February 27, 2006, Cisneros admitted the charges in the NTA, and the Immigration Judge (IJ) ordered him removed to Mexico. Cisneros was removed to Mexico on the same day.

Cisneros's criminal history establishes that he was found in the United States at least four times following his February 27, 2006 removal. He was convicted of reckless driving on July 10, 2007, and was returned to Mexico on September 24, 2007. On July 1, 2008, he was convicted of several violations of the California Vehicle Code, including driving on a suspended or revoked license, and sentenced to probation; the next day he was returned to Mexico. On January 16, 2009, he was convicted of possession of methamphetamine. A little over a month later, on February 23, 2009, he was again returned to Mexico. Finally, on September 18, 2009, Cisneros was arrested by the Carlsbad, California police for possessing .3 grams of methamphetamine. He pleaded guilty to this

---

[1]"[A]ny alien convicted of . . . (II) a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance . . . is inadmissible." § 1182(a)(2)(A)(i).

[2]"Any alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit under this chapter (including section 1324a of this title) or any other Federal or State law is inadmissible." § 1182(a)(6)(C)(ii)(I).

[3]"[A]ny immigrant at the time of application for admission—(I) who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter . . . is inadmissible." § 1182(a)(7)(A)(i).

offense and was sentenced to 150 days in jail and 3 years probation.

In February 2010, Cisneros was indicted by a federal grand jury for illegal reentry after removal, in violation of 8 U.S.C. § 1326.[4] The government based its § 1326 prosecution on Cisneros's February 27, 2006 removal order. Before trial, Cisneros moved to dismiss the § 1326 indictment on the ground that the removal order was invalid because the removal proceedings were fundamentally unfair; specifically, Cisneros argued that the IJ had failed to inform him that he could withdraw his application for admission into the United States, and he had been prejudiced as a result. The district court denied Cisneros's motion to dismiss the indictment. Cisneros then entered into a plea agreement, which preserved his right to appeal the court's denial.[5] After judgment was entered, Cisneros filed this timely appeal.

## II

On appeal, Cisneros argues that the February 27, 2006 removal order was invalid, and therefore the district court erred in denying his motion to dismiss the § 1326 count of the superseding indictment. We review this claim de novo. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004).

[1] An alien commits the crime of illegal reentry after removal if the alien "(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding,

---

[4]A superseding indictment was filed in April 2010 which added a count charging Cisneros with falsely claiming U.S. citizenship, in violation of 18 U.S.C. § 911.

[5]The court dismissed the § 911 charge pursuant to the plea agreement. Cisneros therefore pleaded guilty and was sentenced on the illegal reentry charge alone.

and thereafter (2) enters, attempts to enter, or is at any time found in, the United States" without the Attorney General's prior consent to the alien's reapplication for admission or proof that the alien was not required to obtain such advance consent. 8 U.S.C. § 1326(a)(1)-(2). Thus, a predicate removal order is a necessary element of a § 1326 prosecution.

**[2]** An alien has a limited right to make a collateral attack on the validity of the removal order that is the predicate to the § 1326 action. Under § 1326(d), an alien criminal defendant may "challenge the validity" of such a removal order if the alien demonstrates that "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." § 1326(d). The entry of a removal order is "fundamentally unfair" for purposes of § 1326(d)(3) only if the removal proceeding violated the alien's due process rights and the alien suffered prejudice as a result. *United States v. Arias-Ordonez*, 597 F.3d 972, 976 (9th Cir. 2010).[6] If the alien alleges that the IJ's failure to provide information about a form of potentially available discretionary relief caused a due process violation, the alien must show prejudice by establishing that it was plausible that the IJ would have granted such relief. *See United States v. Barajas-Alvarado*, No. 10-50134, ___ F.3d ___, 2011 WL 3689244, at *9 (9th Cir. Aug. 24, 2011) (citing *United States v. Arce-Hernandez*, 163 F.3d 559, 563 (9th Cir. 1998)). This requires the alien to demonstrate that, "in light of the factors relevant to the form of relief being sought, and based on the 'unique circumstances of [the alien's] own case,' it was plausible (not merely conceivable) that the IJ would have exercised his discretion in the

---

[6]The government does not dispute that the other two requirements for a collateral challenge under § 1326(d), exhaustion of administrative remedies and improper deprivation of the opportunity for judicial review, *see* § 1326(d)(1)-(2), are satisfied here.

alien's favor." *Id.* (alteration in original) (quoting *United States v. Corrales-Beltran*, 192 F.3d 1311, 1318 (9th Cir. 1999)).

**[3]** In this case, Cisneros argues that the IJ's failure to advise him of the possibility of withdrawing his application for admission at the time of the February 27, 2006 hearing was a violation of his due process rights. Further, he argues, this violation prejudiced him because absent the error, he would have asked for permission to withdraw his application and plausibly would have received such relief. Because determining whether Cisneros has established a due process violation would require us to address an issue of first impression in our circuit,[7] we assume for present purposes that Cisneros has established that his due process rights were violated, and begin our analysis with the question whether Cisneros can show prejudice, *i.e.*, whether he has demonstrated that it was plausible that the IJ would have granted his request to withdraw his application for admission.

## A

In order to evaluate Cisneros's claim of prejudice, we must review the framework authorizing IJs to permit aliens to withdraw their applications for admission. Despite statutory and regulatory changes, the basic framework has remained consistent over time.

---

[7]We have held that an IJ presiding over a removal hearing has a duty to inform an alien of his or her "apparent eligibility" for certain kinds of immigration relief, and that an IJ's failure to perform this duty constitutes a due process violation that "can serve as the basis for a collateral attack" under § 1326(d). *United States v. Lopez-Velasquez*, 629 F.3d 894, 896-97 (9th Cir. 2010) (en banc). We have never held, however, that withdrawal of an application for admission qualifies as an immigration "benefit" to which 8 C.F.R. § 1240.11(a)(2)'s duty to inform applies. *Cf. United States v. Calderon-Segura*, 512 F.3d 1104, 1108 (9th Cir. 2008) (assuming but not deciding that the IJ's duty to inform applies to withdrawal).

Before the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), both IJs and immigration officers exercised their discretion to permit aliens to withdraw their applications for admission based on case law and internal practices. *See Barajas-Alvarado*, 2011 WL 3689244, at *9. The BIA's precedential opinion, *In re Gutierrez*, 19 I. & N. Dec. 562 (BIA 1988), provided guidance to IJs in exercising this discretion. *Gutierrez* involved an alien who attempted to enter the United States at San Francisco International Airport by means of a fraudulent document. *Id.* at 563. The IJ determined that the alien was excludable, but permitted him to withdraw his application for admission, citing as "positive considerations" the facts that the applicant was married to a lawful permanent resident who would become eligible for citizenship in one year, had a United States citizen child and was expecting a second, had no arrest or welfare record, and had been gainfully employed and was supporting his family. *Id.* at 563-64.

The BIA reversed, holding "that a balancing of the equities test is not an appropriate method by which to determine whether an alien merits permission to withdraw an application for admission." *Id.* at 564. Rather, the BIA determined that "[a]n immigration judge should not allow withdrawal unless an alien, in addition to demonstrating that he possesses both the intent and the means to depart immediately from the United States, establishes that factors directly relating to the issue of his admissibility indicate that granting withdrawal would be in the interest of justice (*i.e.*, that justice would be ill served if an order of exclusion was entered)." *Id.* at 564-65. Further, the BIA ruled that once an IJ has determined that an alien is excludable, permission to withdraw "should ordinarily only be granted with the concurrence of the Service." *Id.* at 565. Applying these principles to the case before it, the BIA held that "even if we were to disregard the applicant's attempted fraudulent entry, we can discern no facts or circumstances relevant to the issue of his admissibility which suggest

that justice demands that he be allowed to withdraw his application for admission." *Id.*

When Congress enacted IIRIRA, it codified withdrawal of an application for admission as a form of discretionary relief. *See* 8 U.S.C. § 1225(a)(4). Section 1225(a)(4) provides that "[a]n alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States."[8] The agency subsequently promulgated regulations to implement § 1225(a)(4), *see* 62 Fed. Reg. 10,312, 10,313 (Mar. 6, 1997), and adopted the standard the BIA had articulated in *Gutierrez* to govern an IJ's discretion to permit an alien to withdraw an application for admission. *See* 8 C.F.R. § 1240.1(d).[9]

[4] Under § 1240.1(d), an IJ may grant an alien's request for withdrawal only if: (1) the alien is an arriving alien;[10] (2) the alien demonstrates that the alien "possesses both the intent and the means to depart immediately from the United States"; and (3) the alien "establishes that factors directly relating to the issue of inadmissibility indicate that the granting of the withdrawal would be in the interest of justice." § 1240.1(d). In addition, "[o]nce the issue of inadmissibility has been resolved," an IJ ordinarily should permit withdrawal only if

---

[8]An "alien applying for admission" is defined as any "alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." § 1225(a)(1).

[9]Immigration officers are guided by a different regulation, 8 C.F.R. § 1235.4, as well as the Inspector's Field Manual. *Barajas-Alvarado*, 2011 WL 3689244, at *9-10. Neither is applicable here.

[10]"Arriving aliens" are a subset of the broader category of the "alien[s] applying for admission" referenced in § 1225(a)(4); the term applies only to aliens who are (1) "coming or attempting to come into the United States at a port-of-entry," (2) "seeking transit through the United States at a port-of-entry," or (3) "interdicted in international or United States waters and brought into the United States by any means." 8 C.F.R. § 1001.1(q).

DHS concurs in the alien's request. *Id.*[11] Because § 1240.1(d) essentially mirrors the BIA's ruling in *Gutierrez*, we interpret the key criterion, that the alien must establish "that factors directly relating to the issue of inadmissibility indicate that the granting of the withdrawal would be in the interest of justice," in light of that decision.[12]

[5] Although *Gutierrez* did not provide a comprehensive list of the "factors directly relating to the issue of inadmissibility," *Gutierrez* does make clear that equitable considerations such as the length of the alien's presence in the United States, the alien's employment record, the strength of the alien's family ties to the United States, the alien's U.S. citizen

---

[11]In full, § 1240.1(d) provides:

> An immigration judge may allow only an arriving alien to withdraw an application for admission. Once the issue of inadmissibility has been resolved, permission to withdraw an application for admission should ordinarily be granted only with the concurrence of the Service. An immigration judge shall not allow an alien to withdraw an application for admission unless the alien, in addition to demonstrating that he or she possesses both the intent and the means to depart immediately from the United States, establishes that factors directly relating to the issue of inadmissibility indicate that the granting of the withdrawal would be in the interest of justice. During the pendency of an appeal from the order of removal, permission to withdraw an application for admission must be obtained from the immigration judge or the Board.

8 C.F.R. § 1240.1(d).

[12] The BIA has consistently relied on *Gutierrez* in interpreting and applying 8 C.F.R. § 1240.1(d), as shown in a series of unpublished decisions issued after the promulgation of the regulation in 1997. *See, e.g.*, *In re: Harry Twum-Danso*, 2009 WL 888521 (BIA Mar. 16, 2009) (unpublished); *In re: Christopher Levon Scholl*, 2009 WL 638892 (BIA Feb. 24, 2009) (unpublished); *In re: Griselda Canedo*, 2008 WL 3919087 (BIA July 30, 2008) (unpublished); *In re: Pablo Reyes Ventura*, 2007 WL 1129364 (BIA Feb. 13, 2007); *In re: Arnulfo Santiago-Dominguez*, 2006 WL 1558744 (BIA Apr. 19, 2006) (unpublished). *Gutierrez* remains the only published BIA decision on the topic of withdrawal.

children, and the fact that the alien has a spouse who will be eligible for citizenship in the near future, are not such factors. 19 I. & N. Dec. at 565. Rather, the relevant factors are those directly relating to the grounds that Congress has identified for an alien's inadmissibility, such as entry into the United States by means of fraud or conviction of specified crimes. *See generally* 8 U.S.C. § 1182(a)(2) (stating that being convicted of certain crimes, such as drug offenses, render an alien inadmissible); § 1182(a)(6)(C)(i) (stating that aliens who seek admission into the United States "by fraud or willfully misrepresenting a material fact" are inadmissible). Thus, following the logic of *Gutierrez*, an IJ deciding whether to permit withdrawal would not consider equitable considerations, but would consider the reasons for the alien's inadmissibility and whether those reasons establish that it would be "in the interest of justice" to allow the alien to avoid a formal removal order. *See* 62 Fed. Reg. at 10,313 (stating that one of the purposes of allowing withdrawal is to prevent "aliens who may be *inadvertently or unintentionally* in violation of the immigration laws or regulations" from being "subject to the harsh consequences of a formal removal order" (emphasis added)).

B

We now turn to Cisneros's claim of prejudice, which requires him to show plausible grounds for receiving relief. Cisneros argues that it is plausible the IJ would have granted him permission to withdraw his application for admission because he meets all the criteria of § 1240.1(d): he was an arriving alien,[13] he could have demonstrated that he possessed both the intent and means to depart the United States immediately, and "factors directly relating to the issue of inadmissibility" plausibly indicated "that the granting of the withdrawal

---

[13]Because the February 27, 2006 removal order was based on Cisneros's January 5, 2006 request to enter the United States at the San Ysidro port-of-entry, he was an "arriving alien" as defined in the regulations at the time of his removal hearing. *See* 8 C.F.R. § 1001.1(q).

would be in the interest of justice." According to Cisneros, these factors include: (1) his youth (he was 22 years old at the time of the 2006 removal hearing); (2) his strong family ties to the United States (he had parents and siblings living in the United States); and (3) his desire to avoid an order of removal due to the "obvious possibility of a family-based immigration option at some point" in the future. Although he claims the "possibility of a family-based immigration option," Cisneros concedes that he lacked any avenue for family-based immigration at the time of his 2006 removal; rather, he argues that because he had relatives living in the United States, and because the immigration laws are in a "near constant state of flux," it would have made sense for the IJ to assume that one day an avenue could open up for Cisneros to return to the United States.

**[6]** None of these factors helps Cisneros, however, because they are not "factors directly relating to the issue of inadmissibility," and thus they do not establish that permitting Cisneros to withdraw his application for admission would have been "in the interest of justice." § 1240.1(d). Rather, Cisneros's age and family ties to the United States are precisely the sort of equities *Gutierrez* held did not count as factors directly relating to the issue of inadmissibility. *Gutierrez*, 19 I. & N. Dec. at 565. Similarly, because Cisneros was ineligible for family-based immigration at the time of his removal, the speculative possibility that he might have qualified for "a family-based immigration option at some point" in the future does not directly relate to the issue of his inadmissibility. *See id.* at 563-65 (indicating that the alien's spouse's eligibility for citizenship in one year was not a factor directly relating to the issue of the alien's admissibility).

In arguing against that conclusion, Cisneros cites to an unpublished BIA decision, *In re: Arnulfo Santiago-Dominguez*, which suggested that a "factor directly relating to the issue of inadmissibility" for purposes of § 1240.1(d) includes the possibility of obtaining immigration relief

through family ties to the United States. 2006 WL 1558744. Even if that case were precedential, however, it is not on point. Unlike Cisneros, the alien in *Santiago-Dominguez* had the potential at the time of his removal to "obtain relief, such as adjustment of status, through his family members." *Id.* Although the immediate possibility of obtaining immigration relief may directly relate to the issue of an alien's inadmissibility, *cf.*, *e.g.*, 8 U.S.C. § 1255, the merely speculative possibility of obtaining a visa in the future due to a favorable change in the immigration laws does not, *cf. Lopez-Velasquez,* 629 F.3d at 901 (holding that a form of relief for which the alien could "become eligible only with a change in law *and* the passage of eight months" was too speculative to trigger the IJ's duty to advise).

**[7]** Conversely, the factors in the record that do directly relate to the issue of Cisneros's inadmissibility, such as his false claim of citizenship and his conviction for a drug offense, would have weighed against granting his request for withdrawal.[14] *See Gutierrez*, 19 I. & N. Dec. at 565; *see also* 8 U.S.C. § 1182(a)(2)(A)(i)(II), 1182(a)(6)(C)(ii). As *Gutierrez* suggested, when an alien has willfully defied U.S. immigration laws by making a false claim of citizenship, or has

---

[14]Cisneros maintains that we should not consider his false claim of citizenship or his drug offense in determining whether he has shown plausible grounds for relief because he would not have conceded these charges if the IJ had informed him of the possibility of withdrawal and then granted him permission to withdraw at the start of the removal hearing. This argument misses the point. An IJ is required to determine which "factors directly relating to the issue of inadmissibility" are present before granting a request to withdraw, whether the alien has conceded those factors or not. *See* § 1240.1(d) (limiting an IJ's authority to grant permission to withdraw to situations where "factors directly relating to the issue of inadmissibility indicate that the granting of the withdrawal would be in the interest of justice"). Therefore, the timing of Cisneros's concession is irrelevant; all that matters is whether the record would have supported the IJ's finding that Cisneros had made a false claim of citizenship and had been convicted of a drug offense. Cisneros does not argue that the record lacks such support.

become inadmissible due to a criminal offense,[15] the IJ can reasonably decide that it is not in the "interest of justice" to grant the alien relief from a formal removal order.

[8] In sum, we conclude that in light of the "unique circumstances" of Cisneros's case, *Corrales-Beltran,* 192 F.3d at 1318, it is not plausible that the IJ would have granted him permission to withdraw his application for admission. Cisneros therefore cannot show that he was prejudiced by the IJ's alleged error, and cannot show that the entry of the February 27, 2006 removal order was "fundamentally unfair" as required under § 1326(d)(3).[16] Accordingly, his collateral attack on the removal order fails, and we uphold the district court's ruling.

**AFFIRMED.**

---

[15]Cisneros argues that IJs sometimes grant withdrawal despite an alien's criminal convictions, and points to two unpublished BIA decisions in support. *See In re: Laurie Leigh Hill*, 2008 WL 5181745 (BIA Nov. 12, 2008) (unpublished), *In re: Pablo Reyes Ventura*, 2007 WL 1129364 (BIA Feb. 13, 2007). Because these decisions are not precedential, they are not binding on IJs or the BIA. Moreover, because neither case gave a reasoned explanation as to the basis for granting withdrawal, they do not assist Cisneros in establishing that it is plausible that the IJ would have granted Cisneros relief based on "his unique circumstances," *see Barajas-Alvarado*, 2011 WL 3689244, at *10 n.17, which also included a false claim of citizenship and no positive factors.

[16]Because we decide the appeal on this basis, we do not reach the parties' arguments as to whether Cisneros's due process rights were violated. *See supra* p. 16888. Nor do we reach Cisneros's argument that the IJ could have granted him relief without first securing DHS's concurrence.