19-3001 (L)
Juras v. Garland

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2021
Nos. 19-3001 (L), 20-248 (Con)

BARTLOMIEJ JURAS,
*Petitioner*,

*v.*

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,
*Respondent.*

On Petition for Review of an Order
of the Board of Immigration Appeals.
A056-062-135.

ARGUED: SEPTEMBER 21, 2021
DECIDED: DECEMBER 17, 2021

Before: LIVINGSTON, *Chief Judge*, CALABRESI, and NARDINI, *Circuit Judges*.

Petitioner Bartlomiej Juras seeks review of decisions of the Board of Immigration Appeals affirming the decision of an Immigration Judge to allow Juras to withdraw his application for admission to the United States, denying Juras's motion to reopen, and affirming the Immigration Judge's finding that Juras was inadmissible. We hold that we lack jurisdiction to review both the agency's decision to allow Juras to withdraw his application and to deny Juras's motion to reopen, and accordingly DISMISS the petitions insofar as they challenge those decisions. However, because our jurisdiction to review the Immigration Judge's inadmissibility finding depends on whether that finding survives the withdrawal of Juras's application for admission and therefore qualifies as a "final order of removal," and because this appears to be a question of first impression in this Circuit that also has not been resolved by the agency, we GRANT the petition for review in 19-3001 in part and REMAND the case to the Board of Immigration Appeals to clarify what, if any, preclusive effect the Immigration Judge's inadmissibility finding, affirmed by the Board, would be given in subsequent immigration proceedings.

---

MICHAEL P. DIRAIMONDO (Marialaina L. Masi, Stacy A. Huber, *on the brief*), DiRaimondo & Masi, PC, Bohemia, NY, *for Petitioner*.

JOHN BEADLE HOLT (Ethan P. Davis, Keith I. McManus, Rachel L. Browning, *on the brief*), Office of Immigration Litigation, United States Department of Justice, Washington, D.C., *for Respondent*.

2

TIMOTHY W. HOOVER, Hoover & Durland LLP, Buffalo, NY, *as Amicus Curiae.*

---

WILLIAM J. NARDINI, *Circuit Judge*:

Congress has sorted decisions in immigration proceedings into two categories: those that are subject to judicial review, and those that are not. The line between the two categories is often clear, but not always. This case illustrates the point.

Bartlomiej Juras, a Polish citizen, was a lawful permanent resident ("LPR") of the United States—in common parlance, he had a "green card." But he moved back to Poland for a number of years to care for his ailing grandfather. When Juras returned, an Immigration Judge ("IJ") determined that he had stayed overseas too long: he had effectively abandoned his LPR status and was now inadmissible to the United States. The IJ let Juras withdraw his application for admission; this is an act of administrative discretion that generally benefits an alien, who thereby avoids being "removed," which would

3

make it more difficult for him to seek certain immigration benefits in the future. But withdrawal might have a downside, because it could mean that Juras would be definitively required to re-start the immigration process from square one. Juras turned to the Board of Immigration Appeals ("BIA"), where he hedged his bets. At first, he argued that the IJ erred by finding him inadmissible but, if the BIA disagreed, that he still wanted to withdraw his application for admission. Rebuffed by the BIA on admissibility but allowed to withdraw, Juras moved to reopen his proceedings. Backtracking on his earlier position, he now sought to withdraw the withdrawal of his application. But the BIA denied that request, too.

Juras has now filed two petitions in our Court which, together, seek review of three agency rulings: (1) the IJ's decision (affirmed by the BIA) to allow withdrawal of Juras's application for admission; (2) the BIA's denial of Juras's motion to reopen, in which he tried to take back his withdrawal; and (3) the IJ's apparent determination

4

(seemingly affirmed by the BIA) that Juras had abandoned his LPR status and was inadmissible. We easily conclude that we lack jurisdiction to review the first two rulings, which are committed to agency discretion by statute. On those two points, therefore, we dismiss Juras's petitions.

The third issue is thornier. We have jurisdiction over Juras's petition only if it seeks review of a "final order of removal" under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(a)(1). An order of removal, in turn, includes an "order . . . concluding that the alien is deportable" under 8 U.S.C. § 1101(a)(47)(A). And so whether we have jurisdiction to review any part of the IJ's decision would seem to depend in turn on whether there was in fact or could be any decision on an application that was withdrawn—in other words, whether there is or ever was an order "concluding that" Juras is removable. That is a question on which neither we nor the BIA have yet spoken in a precedential opinion.

While we are grateful for the arguments Amicus has made, we have determined that it is most prudent in these circumstances to remand the matter to the BIA for the limited purpose of providing its view of the status of the IJ's finding of inadmissibility (affirmed by the BIA) made in connection with Juras's withdrawn application—that is, whether the agency would be obliged to give it binding effect in future administrative immigration proceedings or whether that finding is nothing more than dicta for future agency officials to follow (or not) only as they might deem it persuasive. The agency's view on the *nature* of its inadmissibility finding will then inform our analysis of whether Congress has given us jurisdiction to review the *substance* of the inadmissibility finding.

## I.    BACKGROUND

### A.    The Proceedings Before the Immigration Judge

Ordinarily, an immigrant seeking admission to the United States must present a valid, unexpired immigrant visa and a valid, unexpired passport or other travel document. 8 U.S.C. § 1181(a).

Someone who qualifies as a "returning resident"—including an LPR returning from a "temporary visit abroad"—need not meet these requirements. 8 U.S.C. §§ 1101(a)(27)(A), 1181(b). But this exemption applies only if a returning LPR's visit abroad was indeed "temporary." If not, he is treated like others seeking entry to the United States and so is inadmissible pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I), absent valid entry documents.

In 2003, Juras, a Polish citizen, was admitted to the United States as an LPR. In 2007, Juras returned to Poland and stayed there for a long period of time. In 2013, after living in Poland for six years, Juras attempted to reenter the United States from Canada over the Rainbow Bridge in Niagara Falls, New York. Juras was charged as inadmissible as an arriving alien without valid entry documents, paroled into the United States for a year, and placed in removal proceedings. Juras was represented by counsel during these proceedings and challenged the government's claim that he had

abandoned his LPR status by remaining outside of the United States for an extended period.

The removal proceedings against Juras culminated in a hearing before an IJ in 2018, at which Juras testified as follows: After becoming an LPR in 2003, Juras traveled between Poland and the United States several times between 2003 and 2007, staying in Poland for three to eight months at a time. In 2007, Juras traveled to Poland and remained there for six years. During that time, Juras took care of his grandfather, who suffered from Alzheimer's disease and dementia, and managed his grandfather's farm. Juras initially planned to return to the United States by Christmas of 2010, thinking that his grandfather's condition would improve by then. The grandfather remained in poor health, however, so Juras stayed in Poland until 2013, when his father was able to retire and take over Juras's grandfather's care. When asked what steps Juras took between 2007 to 2013 to return to the United States, Juras answered that he stayed

8

in contact with a friend who owned a company in the United States for which Juras was working at the time of the hearing. He further testified that he did not own property in Poland and did not work while in Poland, but that he did have Polish bank accounts which he closed when he returned to the United States in 2013. Juras admitted that he did not file taxes or rent an apartment in the United States before 2013. He further admitted that he never asked United States Citizenship and Immigration Services for permission to remain outside the United States for an extended period. Ultimately, Juras testified that he did not believe that he had abandoned his permanent resident status because he always intended to return to the United States and build a life but had no choice but to remain in Poland.

Juras's sister, Michaelina Babuska, also testified at the hearing. She corroborated Juras's testimony concerning the need for Juras to stay in Poland to care for their sick grandfather, but testified that Juras

and his family members were all aware that Juras's staying in Poland placed his LPR status in jeopardy.

In its closing argument, the government argued that Juras had abandoned his LPR status but noted that it would not object if the IJ let Juras withdraw his application for admission. Under 8 U.S.C. § 1225(a)(4) and 8 C.F.R. § 1240.1(d), an IJ may permit an arriving alien in removal proceedings to withdraw his application for admission if the IJ is satisfied that the alien has the intent and the means to immediately depart the United States, and if permitting withdrawal would be in the interests of justice. There can be real advantages for an alien to withdraw an application in such a situation. An alien allowed to withdraw his application and leave the country is not considered "removed," and therefore avoids the restrictions found in 8 U.S.C. § 1182(a)(9)(A)(i), which provides that an alien who has been removed is, with some exceptions, inadmissible for five years after the date of his removal. Juras's counsel argued in closing that Juras

had not abandoned his LPR status but did not address the possibility of withdrawal.

At the end of the hearing, the IJ found that Juras had abandoned his LPR status by staying in Poland between 2007 and 2013. Because Juras did not qualify as an LPR returning from a temporary visit abroad, the IJ found that Juras was inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an arriving alien seeking admission to the United States without a visa and a travel document. Observing that "[a]n order of removal can carry with it certain harsh consequences," the IJ next considered whether to allow Juras to withdraw his application for admission under 8 U.S.C. § 1225(a)(4) and 8 C.F.R. § 1240.1(d). Certified Administrative Record[1] ("CAR") 126. Noting the government's non-opposition, the IJ stated that she would "allow the respondent to withdraw [h]is application for admission rather than enter an order of removal against him." *Id.*

[1] References to the Certified Administrative Record refer to the record in Juras's petition for review of the BIA's denial of his motion to reopen, No. 20-248.

11

Juras's lawyer did not object to or otherwise address the IJ's decision to allow Juras to withdraw his application.

### B. Juras's Appeal to the BIA

Through counsel, Juras appealed to the BIA. Juras argued that the IJ erred in finding that Juras had abandoned his LPR status. However, Juras also argued that, in the event the BIA agreed that he had abandoned his LPR status, he "continue[d] to request withdrawal of his application for admission" to the United States. CAR 55.

On August 20, 2019, the BIA dismissed Juras's appeal. The BIA upheld the IJ's finding that Juras had abandoned his LPR status and was thus inadmissible for lack of valid entry documents. The BIA also "note[d] DHS'[s] non-opposition and affirm[ed] the Immigration Judge's decision to allow the respondent to withdraw his application for admission." CAR 44. Thereafter, Juras found new counsel and timely petitioned for our review of the BIA's August 20, 2019, decision.

### C.    Juras's Motion to Reopen

Juras filed a timely motion to reopen the proceedings before the BIA.  In an affidavit accompanying his motion to reopen, Juras stated that he had not understood that, by withdrawing his application for admission, he was accepting that he had abandoned his green card and that he would be required to return to Poland immediately.  Juras explained that he "d[id] not wish to withdraw [his] application for admission, and ask[ed] that [his] prior attorney's request to withdraw [his] application for admission be withdrawn."  CAR 39.

On December 23, 2019, the BIA denied Juras's motion to reopen.  The BIA discredited Juras's statement that he did not understand the legal consequences of withdrawing his application for admission because Juras was represented by counsel before the IJ and on appeal, where he asked the BIA to affirm the IJ's decision to allow withdrawal.  The BIA noted that Juras had not argued that his prior counsel had been ineffective, and that absent "egregious circumstances," an attorney's statements and actions are binding

13

upon his client. CAR 3. The BIA found that Juras had not shown egregious circumstances and denied his motion to reopen. Juras timely petitioned for review of the BIA's denial of his motion to reopen.

Juras's two petitions were consolidated for our review. On April 28, 2021, after receiving briefing on the merits, we ordered supplemental briefing to address whether the Court has jurisdiction over Juras's petitions under 8 U.S.C. § 1252(a). After both Juras and the government argued that we have jurisdiction, we appointed Timothy W. Hoover as amicus curiae to brief and to argue that the Court does not have jurisdiction. Amicus has ably discharged his assigned responsibilities, and the Court thanks him for his efforts.

II.    **DISCUSSION**

**A. Judicial Review Under the INA**

Section 1252 of Title 8 of the United States Code governs judicial review of orders of removal. The statute restricts our

14

jurisdiction to entertain petitions for review of agency orders in immigration cases in several ways.

First, we have "jurisdiction to review only petitions for review of *final* orders of removal." *Alibasic v. Mukasey*, 547 F.3d 78, 82 (2d Cir. 2008) (internal quotation marks omitted); *see also* 8 U.S.C. § 1252(d). The INA in turn defines an order of removal as "the order of the special inquiry officer . . . concluding that [an] alien is deportable or ordering deportation," 8 U.S.C. § 1101(a)(47)(A),[2] and provides that such orders become final "upon the earlier of (i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals," 8 U.S.C.

---

[2] Although the statute refers to an "order of deportation," that term is used interchangeably in the INA with "order of removal." *Thapa v. Gonzales*, 460 F.3d 323, 333 n.3 (2d Cir. 2006) (noting that Congress amended the INA to replace the previous distinction between deportation and exclusion with the inclusive term "removal" and construing the reference to orders of deportation in 8 U.S.C. § 1101(a)(47)(A) to apply to orders of removal.)

§ 1101(a)(47)(B). "A 'special inquiry officer' is an IJ . . . ." *Rhodes-Bradford v. Keisler*, 507 F.3d 77, 79 (2d Cir. 2007) (citing 8 C.F.R. § 3.0).

In addition to restricting judicial review to final orders of removal, § 1252 carves out certain categories of agency decisions over which we lack jurisdiction. *See* 8 U.S.C. § 1252(a)(2). As relevant here, § 1252(a)(2)(B) deprives us of jurisdiction to review decisions committed by statute to the discretion of the Attorney General. 8 U.S.C. § 1252(a)(2)(B) ("[N]o court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General . . . ."). Section 1252(a)(2)(B) applies only to determinations made discretionary by statute. *Kucana v. Holder*, 558 U.S. 233, 237 (2010) ("We hold that the key words 'specified under this subchapter' refer to statutory, but not to regulatory, specifications."). And the "subchapter" in question is Subchapter II of Chapter 12 of

16

Title 8 of the United States Code. Subchapter II is a lengthy one, currently encompassing Sections 1151 through 1382 of Title 8.

Finally, although under § 1252(a)(2) we generally lack jurisdiction to review, *inter alia*, discretionary decisions by the Attorney General, a Court of Appeals nonetheless retains jurisdiction in a petition for review filed pursuant to § 1252 to review any "constitutional claims or questions of law" raised by such decisions. 8 U.S.C. § 1252(a)(2)(D); *see also Rosario v. Holder*, 627 F.3d 58, 61 (2d Cir. 2010).

## B.    Our Jurisdiction over Juras's Claims

With these general principles in mind, we evaluate whether we have jurisdiction over the claims raised by Juras in his petitions for review. Juras challenges (1) the IJ's[3] decision (affirmed by the BIA) to allow him to withdraw his application for admission to the United

---

[3] "Ordinarily we review the BIA's decision, not the decision of the IJ . . . ." *Secaida-Rosales v. INS*, 331 F.3d 297, 305 (2d Cir. 2003). However, where, as here, the BIA summarily affirms and adopts an IJ's decision, we review the decision of the IJ. *See id*.

17

States; (2) the BIA's denial of his motion to reopen the proceedings; and (3) the IJ's putative finding (affirmed by the BIA) that he was not admissible as a "returning resident" and lacked the necessary entry documents. We consider our jurisdiction over each of these claims in turn.

### 1. *Our Jurisdiction to Review the Withdrawal Decision*

We first hold that we lack jurisdiction to review an IJ's decision to allow a petitioner to withdraw his application for admission to the United States. This conclusion follows from a straightforward application of 8 U.S.C. § 1252(a)(2)(B) which, as noted above, deprives courts of jurisdiction to review decisions committed by statute to the discretion of the Attorney General under Subchapter II. The decision to allow withdrawal of an application for admission is precisely such a decision: 8 U.S.C. § 1225(a)(4) provides that "[a]n alien applying for admission may, *in the discretion of the Attorney General* and at any time, be permitted to withdraw the application for admission and depart immediately from the United States." (emphasis added). Although

18

the Attorney General has delegated the exercise of this discretion by regulation to, *inter alia*, IJs, *see* 8 C.F.R. § 1240.1(d), the decision still falls squarely within boundaries of § 1252(a)(2)(B).

We therefore lack jurisdiction over Juras's petition for review of the IJ's withdrawal decision except insofar as Juras raises a constitutional claim or question of law. *See* 8 U.S.C. § 1252(a)(2)(B), (D). Juras makes no claim under the United States Constitution, so we ask only whether his arguments raise a question of law. In doing so, we "determine our jurisdiction by looking at the underlying nature of the [agency's] determination rather than any gloss offered by the parties" and ask "whether the [agency] is expressing legal doctrine or whether it is engaged in the factfinding and factor-balancing that are at the core of its discretion." *Rosario*, 627 F.3d at 62 (emphasis omitted); *see also Nouritajer v. Jaddou*, 18 F.4th 85, 89 (2d Cir. 2021) (rejecting plaintiff's attempt to cast challenges as procedural

19

rather than substantive to avoid operation of § 1252(a)(2)(B)'s jurisdictional bar).

Juras argues that the IJ erred by failing to explain to Juras the legal consequences of the withdrawal of his application, failing to order Juras to leave the United States by a certain date, and failing to ask Juras certain questions before granting withdrawal. Specifically, Juras faults the IJ for failing to "ask[] the Petitioner if he had a valid passport or if he had the funds to purchase a ticket to leave the U.S." and for failing to "specifically ask the Petitioner, under oath, 'do you have the intent to leave the U.S. if I allow you to withdraw your application for admission.'" Pet. Br. 17. But compliance with the legal standard governing the withdrawal of an application for admission to the United States does not require an IJ to first explain the legal consequences of withdrawal to an immigrant, let alone one represented by counsel. Nor is there any requirement that an IJ ask the specific questions Juras identifies. An IJ must simply be assured

20

that an arriving alien, "in addition to demonstrating that he or she possesses both the intent and the means to depart immediately from the United States, [has] establishe[d] that factors directly relating to the issue of inadmissibility indicate that the granting of the withdrawal would be in the interest of justice." 8 C.F.R. § 1240.1; *see also In re Gutierrez*, 19 I. & N. Dec. 562, 564–65 (B.I.A. 1988) (same). Although the questions Juras claims the IJ should have asked would perhaps help establish an arriving alien's intent and means to depart immediately from the United States, they are not required by law. Juras's arguments, then, boil down to "a quarrel about fact-finding," and we do not have jurisdiction to consider them. *Barco-Sandoval v. Gonzales*, 516 F.3d 35, 39 (2d Cir. 2008). Accordingly, we dismiss Juras's petition for review of the BIA's August 20, 2019, decision insofar as it challenges the agency's decision to allow him to withdraw his application because this decision is committed by statute to the discretion of the Attorney General.

21

### 2. *Our Jurisdiction to Review the Denial of Juras's Motion to Reopen*

We next consider our jurisdiction to review the BIA's denial of Juras's motion to reopen. We hold that § 1252(a)(2)(B) bars our review of the denial of the motion to reopen because it is sufficiently connected to the underlying order allowing withdrawal.

In *Durant v. INS*, we considered the effect of a different jurisdictional bar found in 8 U.S.C. § 1252 on a motion to reopen proceedings before the BIA. 393 F.3d 113, 115–16 (2d Cir. 2004). The provision at issue in *Durant*—§ 1252(a)(2)(C)—bars judicial review of final orders of removal against aliens whose convictions for certain criminal offenses render them removable. The petitioner in *Durant* was ordered removed because of his convictions for qualifying criminal offenses, and the BIA later denied his motion to reopen the proceedings. *Durant*, 393 F.3d at 114–15. The petitioner sought our review of both his final order of removal and the denial of his motion to reopen. *Id.* We held that we lacked jurisdiction over both petitions

because the "orders [were] sufficiently connected that permitting review of a motion to reopen when § 1252(a)(2)(C) bars review of the final order of removal would provide an improper backdoor method of challenging a removal order." *Id.* at 115. We reasoned that "[e]ven though [we] may not consider the merits of the underlying removal order when reviewing the denial of a motion to reopen, a holding . . . that the BIA abused its discretion in denying a motion to reopen . . . would have the effect of undermining the jurisdictional bar imposed by 8 U.S.C. § 1252(a)(2)(C)" and would therefore "contravene Congress's intent" in limiting judicial review of certain orders in immigration matters. *Id.* We reaffirmed and expanded this principle in later cases. *See Santos-Salazar v. U.S. Dep't of Just.*, 400 F.3d 99, 103 (2d Cir. 2005) (holding that we lacked jurisdiction to review motions to reconsider a denial of a motion to reopen where we lacked jurisdiction to review the underlying order of removal); *Sepulveda v. Gonzales*, 407 F.3d 59, 64 (2d Cir. 2005) (applying the "*Santos-Salazar*

principle" to hold that we had jurisdiction to review motions to reopen and to reconsider where we were not barred by § 1252(a)(2)(B) from reviewing the underlying final order of removal). *See also Nouritajer*, 18 F.4th at 90 ("[S]ubject matter jurisdiction is lacking to review the underlying discretionary . . . decision by USCIS, so jurisdiction is similarly lacking to review . . . the denial of the motion to reopen.").

Applying the logic of *Durant* and the cases that followed it, the denial of the motion to reopen and the order allowing the withdrawal of Juras's application for admission are "sufficiently connected" such that our review of the former would undermine Congress's decision to bar our review of the latter. *Sepulveda*, 407 F.3d at 64. Because "we cannot, on a petition for review of a motion to reopen, exercise jurisdiction over that which we would not have had jurisdiction to review on direct appeal," *Omar v. Mukasey*, 517 F.3d 647, 650 (2d Cir. 2008), we lack jurisdiction to review Juras's motion to reopen. We

accordingly dismiss for lack of jurisdiction Juras's petition for review of the denial of his motion to reopen.

### 3. *Our Jurisdiction to Review the BIA's Inadmissibility Finding*

Finally, we consider our jurisdiction to review the IJ's apparent finding, seemingly affirmed by the BIA, that Juras was inadmissible as lacking proper documents and not a "returning resident." In doing so, we must grapple with the following question: what is the status of the IJ's finding that Juras was inadmissible now that he has withdrawn his application? As explained below, the parties and Amicus offer different answers as to whether that inadmissibility finding survives the withdrawal of Juras's application, or whether Juras would be entitled to a *de novo* adjudication of his abandonment of his LPR status should he reapply for admission. The answer to this question is critical to our jurisdiction to review the inadmissibility finding. As stated above, we have jurisdiction to review only a "final order of removal," 8 U.S.C. § 1252(a)(1). So if, as Amicus and the

government argue, the withdrawal of Juras's application rendered the IJ's inadmissibility finding a legal nullity, then it appears we must dismiss his petition for review, either for lack of a final order of removal or because the matter is moot. *See Swaby v. Ashcroft*, 357 F.3d 156, 160–61 (2d Cir. 2004); *see also Hill v. Holder*, 348 F. App'x 653, 655 (2d Cir. 2009).

We consider first the nature of an immigrant's withdrawal of an application for admission. Before Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), neither statute nor regulation expressly provided for such a withdrawal. *See Gutierrez*, 19 I. &. N. Dec. at 564. However, "IJs and immigration officers exercised their discretion to permit aliens to withdraw their applications for admission based on case law and internal practices." *United States v. Cisneros-Resendiz*, 656 F.3d 1015, 1019 (9th Cir. 2011). In *In re Gutierrez*, the BIA clarified how IJs should exercise this discretion, holding that an immigration judge "should

26

not allow withdrawal unless an alien, in addition to demonstrating that he possesses both the intent and the means to depart immediately from the United States, establishes that factors directly relating to the issue of his admissibility indicate that granting withdrawal would be in the interest of justice." *Gutierrez*, 19 I. & N. Dec. at 564–65. The BIA further held that "a balancing of the equities test is not an appropriate method by which to determine whether an alien merits permission to withdraw an application for admission," and that "once the exclusion hearing has been conducted and the issues of excludability have been resolved, such permission should ordinarily only be granted with the concurrence of the [government]." *Id.*

In enacting IIRIRA, Congress codified the procedure for withdrawing an application. *See* 8 U.S.C. § 1225(a)(4). As noted above, § 1225(a)(4) provides that "[a]n alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart

immediately from the United States." *Id.* The Attorney General later promulgated regulations delegating this discretion to IJs and adopting the standard for allowing withdrawal articulated by the BIA in *Gutierrez*. 8 C.F.R. § 1240.1(d). Also as noted above, under the INA, an alien who is removed but seeks admission to the United States within five years of the date of his removal is inadmissible unless he first receives the Attorney General's permission to reapply for admission. 8 U.S.C. § 1182(a)(9)(A)(i)–(iii). "However, if permission to withdraw an application for admission is granted to an applicant, his departure is not pursuant to an order of [removal] and permission to reapply for admission is not required." *Gutierrez*, 19 I. & N. Dec. at 564.

Although the relevant statutes, regulations, and case law make clear the standard an IJ should apply when deciding whether to allow withdrawal of an application for admission, and that an applicant granted withdrawal avoids the five–year bar on reapplying for

admission found in 8 U.S.C. § 1182(a)(9)(A)(i), these authorities do not address the effect, if any, of determinations made in a proceeding in which the application was withdrawn.

The parties and Amicus offer divergent views on this point. Juras argues that, by withdrawing his application, he "relinquished his green card" and, as a result, "may have considerable problems in the future reentering the U.S. . . . ." Pet. Br. 16. But Juras cites no authority for this point, and we have found none.

The government argues that there is a final order of removal in this case because "the agency's decision included a determination that Mr. Juras is deportable . . . for having abandoned his lawful permanent resident status" and the definition of "final order of removal" includes "a determination that the alien is deportable . . . ." Gov't Supp. Br. 1–2 (internal quotation marks omitted). An implicit premise of this argument is that there was an operative inadmissibility finding that survived the withdrawal of Juras's

29

application—that is, that the IJ's "order," not just its preliminary thinking, contained the conclusion that Juras was removable. Curiously, the government later argues that, although we have jurisdiction because a final order of removal was entered against Juras, we should dismiss the petition as moot. Citing our unpublished decision in *Hill v. Holder*, 348 F. App'x 653 (2d Cir. 2009), the government argues that "the withdrawal . . . means that Mr. Juras is free to leave the United States without incurring a legal 'injury,' as the order does *not* preclude him from reapplying for admission and reasserting his claimed lawful permanent resident status." Gov't Supp. Br. 4. This latter position would seem to imply that the IJ's finding of inadmissibility had no effect.

Indeed, Amicus draws precisely that conclusion from *Hill v. Holder*: that the withdrawal of Juras's application "render[ed] the prior IJ finding [of inadmissibility] to be nothing more than an advisory opinion that will not be binding on any future border official

30

or, should it come to it, any future IJ." Amicus Br. 13. This, in the view of Amicus, has two consequences. First, there is no final order of removal because there is no finding of inadmissibility. Second, the case is now moot.

Because it is central to the arguments made to us in the briefs, a closer review of our decision in *Hill v. Holder* is in order, even though it is a non-precedential summary order. *Hill* involved a petitioner who had become an LPR in 1996. *In re Hill*, 2008 WL 5181745, at *1 (B.I.A. Nov. 12, 2008). In 2004, Hill was convicted of violating 18 U.S.C. § 1035(a)(2) by knowingly and willfully making materially false statements in connection with the delivery of or payment for health care benefits. *Id.* Hill then left the United States, came back, and asked to be readmitted as a returning LPR. *Id.* An IJ found him inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I) for having committed a crime of moral turpitude but let him withdraw his application for admission. *Id.* Hill tried to appeal the IJ's

31

determination that his crime of conviction qualified as a crime of moral turpitude, but the BIA dismissed his appeal as moot. *Id.* Specifically, the BIA held that the "withdrawal of an application for admission takes the question of inadmissibility (and indeed, removability) 'off the table'" and concluded that the IJ's finding of inadmissibility was "rendered inoperative" by the withdrawal of Hill's application. *Id.*

Hill petitioned for our review, arguing that the inadmissibility finding survived the withdrawal of his application. *Hill*, 348 F. App'x at 655. We relied on the BIA's reasoning that, because he withdrew his application, Hill would be "entitled to a *de novo* consideration of his admissibility" should he reapply for admission to the United States and dismissed his petition as moot. *Id.* at 655–56.

Of course, *In re Hill* and *Hill v. Holder* were both non-precedential opinions (by the BIA and our Court, respectively), and therefore could not dictate our decision today. But even as persuasive

32

authority, we do not find them particularly enlightening because they ultimately rest upon the BIA's citation of various authorities that— upon closer examination—do not discuss whether the withdrawal of an application for admission renders any finding of inadmissibility a legal nullity without future preclusive effect. *See In re Hill*, 2008 WL 5181745 at *1 (citing *In re Manalo*, 15 I. & N. Dec. 4 (B.I.A. 1974) (an alien granted withdrawal departs the United States without being excluded); *In re Lepofsky*, 14 I. & N. Dec. 718 (B.I.A. 1974) (IJ had power to either allow withdrawal of application or enter an order of exclusion and deportation, not to parole aliens into the United States); *In re Le Floch*, 131 I. & N. Dec. 251, 252–54 (B.I.A. 1969) (an alien has no right to withdraw her application for admission during an appeal to the BIA after the entry of an order of exclusion, and withdrawal during an appeal will be allowed only to prevent a gross miscarriage of justice); *In re Estrada-Tena*, 12 I. & N. Dec. 429, 430–31 (B.I.A. 1967) (holding that an applicant for admission may withdraw application

as of right and ordering that individual applicant be allowed to withdraw, that the order entered in exclusion proceedings below be withdrawn, and that the exclusion proceedings be terminated), *overruled in part by In re Vargas-Molina*, 13 I. & N. Dec. 651 (B.I.A. 1971)). Nor have we found any other decision of this Court[4] or the BIA that addresses the effect of a withdrawal of an application on a putative finding of inadmissibility made in adjudicating that application.

_____

[4] At least one other Court of Appeals has reached a conclusion in tension with that reached by the BIA and our Court in *Hill*, albeit in a different posture. *See Odei v. DHS*, 937 F.3d 1092 (7th Cir. 2019). *Odei* involved an alien who had been found inadmissible, had his invalid visa cancelled, and was detained but not removed because he had indicated a fear of return to his home country. *Id.* at 1093. He later dropped the asylum claim and was allowed to withdraw his application for admission and leave the United States voluntarily. *Id.* The alien later brought a civil suit to challenge the decision not to admit him, but the Seventh Circuit affirmed the dismissal of the suit under 8 U.S.C. § 1252(a)(2)(A)(i), which provides that "no court shall have jurisdiction to review . . . any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to § 1225(b)(1)." *Id.* at 1094–95. The Court of Appeals rejected the alien's argument that because he had withdrawn his application, there was no "order of removal" sufficient to trigger the jurisdictional bar. *Id.* It did so simply by analogizing to a case where an IJ granted a waiver of removal which the BIA reversed, *id.* at 1094–95 (discussing *Guevara v. Gonzales*, 472 F.3d 972, 973, 975–76 (7th Cir. 2007)), an analogy we find unhelpful in understanding the situation before us. *See infra.*

The answer to that question is key to deciding whether we have jurisdiction over Juras's petition for review based on a final "order of deportation," which the INA defines in the disjunctive as an order "concluding that [an] alien is deportable or ordering deportation."[5] 8 U.S.C. § 1101(a)(47)(A). Indeed, in arguing that we have jurisdiction under the first prong of this definition because the IJ determined that Juras is removable (even though she did not order his removal), the government cites several of our precedents relying on the disjunctive nature of § 1101(a)(47)(A). *See, e.g., Alibasic v. Mukasey*, 547 F.3d 78, 82–84 (2d Cir. 2008); *Lazo v. Gonzales*, 462 F.3d 53, 54–55 (2d Cir. 2006).

These precedents have addressed what it takes to satisfy the first prong of the definition of an "order of deportation," but have not answered the question before us—whether the IJ's finding of inadmissibility, affirmed by the BIA, has any preclusive effect given the withdrawal of Juras's application (or, for that matter, whether

---

[5] As noted above, the terms "deportation" and "removal" are used interchangeably under the INA. *See supra* n.2.

there can be any findings at all on a withdrawn application). In *Alibasic*, the IJ found the petitioner removable but granted his asylum application. *Alibasic*, 547 F.3d at 82–83. The BIA then vacated the IJ's grant of asylum but remanded the matter so the IJ could consider the availability of other relief like voluntary departure. *Id.* at 83–84. We denied the government's motion to dismiss for lack of jurisdiction, reasoning that "[t]he IJ's underlying finding of removability . . . still stands and . . . the BIA has simply removed an impediment to the removal that was ordered by the IJ." *Id.* at 83 (internal quotation marks omitted). The IJ's initial finding of removability was therefore a "final order of removal" that gave us jurisdiction over the petition for review. *Id.* Here, by contrast, it is not clear whether the IJ's putative finding of inadmissibility (which the BIA affirmed) or her statements about that finding "still stand" given that Juras withdrew his application for admission, and the BIA affirmed that withdrawal.

Likewise, in a case even further afield from the present situation, we denied a petition for review in *Lazo v. Gonzales.* 462 F.3d at 55. In *Lazo*, the petitioner conceded removability before the IJ, who granted him a waiver from removability. *Id.* at 54. The BIA subsequently reversed the waiver. *Id.* The petitioner argued that the BIA's decision amounted to entry of a removal order in the first instance—something reserved to an IJ, and which therefore exceeded the BIA's authority. *Id.* We disagreed. In our view, the IJ had issued an order of removal within the definition of § 1101(a)(47)(A) because the IJ concluded that the petitioner was removable, and the BIA merely "removed an impediment to the removal that was ordered by the IJ." *Id.* That is, the operative finding of removability was ordered not by the BIA, but by the IJ.[6] *Id.* As with *Alibasic*, *Lazo* provides no

---

[6] Similarly, in *Rhodes-Bradford v. Keisler*, 507 F.3d 77 (2d Cir. 2007), we dismissed a petition for review where an IJ had terminated removal proceedings against the petitioner without finding him removable, and the BIA reversed and ordered the petitioner removed. *Id.* at 79. We vacated the BIA's order, concluding that the BIA did not have the authority to issue removal orders in the first instance, and dismissed the appeal because there was no final order of removal—*i.e.*, no order

guidance for the present case, because it is not clear whether the IJ's finding that Juras is inadmissible was ever operative.

In sum, our precedents do not answer the question we currently face—whether there exists in this case an operative order concluding that Juras is removable.

While we are grateful for Amicus's arguments, we think it prudent in these circumstances to allow the BIA the opportunity to consider the arguments in the first instance, namely whether there is currently a valid "finding of removability," *Alibasic*, 547 F.3d at 83, that presents us with a final order of removal sufficient to confer jurisdiction under 8 U.S.C. §§ 1101(a)(47)(A) and 1252; [7] and

---

by the IJ finding that the petitioner was removable or ordering his removal. *See id.* at 82.

[7] Even where Congress has barred courts from exercising jurisdiction to review certain types of immigration proceedings, "[w]e retain jurisdiction . . . to determine whether [a] jurisdictional bar applies—that is, whether a petitioner satisfies the jurisdictional facts." *James v. Mukasey*, 522 F.3d 250, 253 (2d Cir. 2008); *see also Kuhali v. Reno*, 266 F.3d 93, 100 (2d Cir. 2001) ("Our authority to address such 'jurisdictional facts' stems not from Congress'[s] creation of a particular remedy, but rather from the inherent jurisdiction of Article III federal courts to determine their jurisdiction."). Where possible, we have simply determined the presence or

concomitantly, whether Juras has a legally cognizable interest in the outcome such that his petition for review is not moot. We therefore express no position at this time with respect to these questions.

"Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16 (2002). Sometimes remand is "required by elementary principles of administrative law," and sometimes remand is, "as a matter of discretion, . . . prudent and useful . . . ." *Liu v. U.S. Dept. of Just.*, 455 F.3d 106, 116 (2d Cir. 2006) (emphasis omitted). As noted above, the relevant statutes and regulations do not speak directly to the issue, and there is a dearth of case law—both from the agency and from Article III courts—on this important question, and so we think that

---

absence of those "jurisdictional facts" ourselves. *See, e.g., Bell v. Reno*, 218 F.3d 86 (2d Cir. 2000) (determining the "jurisdictional fact" that petitioner had been convicted of a qualifying aggravated felony triggering the jurisdictional bar found at 8 U.S.C. § 1252(a)(2)(C)). We have at other times, however, found it prudent to remand to the BIA for consideration, in the first instance, of issues upon which it had not previously ruled that bear upon our jurisdictional analysis. *See Gelman v. Ashcroft*, 298 F.3d 150, 152–53 (2d Cir. 2002).

remand is warranted as a matter of discretion. *See id.* (identifying "[i]nsufficient agency attention," "[s]tatutory ambiguity," "[d]earth of circuit law," and "[i]mportance of the issue" as reasons counseling remand as a prudential matter). On remand, "[t]he agency can bring its expertise to bear upon the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law provides." *Orlando Ventura*, 537 U.S. at 17. This process thus "serves the convenience of the BIA as well as this Court, and promotes the purposes of the INA." *Ucelo-Gomez v. Gonzales*, 464 F.3d 163, 172 (2d Cir. 2006). "The administrative process will best be vindicated by clarity in its exercise," *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94 (1943) (internal quotation marks omitted), and so we remand the matter to the BIA to provide that clarity.

Accordingly, we grant in part Juras's petition for review, vacate the August 20, 2019, order of the BIA insofar as it affirmed the IJ's putative inadmissibility finding, and remand the matter back to the BIA to clarify its understanding of the status of any admissibility finding in light of the withdrawal of Juras's application for admission to the United States. Specifically, the BIA should explain what, if any, preclusive effect the IJ's putative finding of inadmissibility, as affirmed by the BIA after withdrawal of Juras's application, would be given in subsequent immigration proceedings.

## III.  CONCLUSION

In sum, we hold as follows:

(1) We lack jurisdiction to review the BIA's affirmance of the IJ's decision to allow Juras to withdraw his application for admission because it is a decision committed by statute to the discretion of the Attorney General.

(2) We lack jurisdiction to review the BIA's denial of Juras's motion to reopen because it is sufficiently connected with

41

the BIA's affirmance of the IJ's withdrawal decision, and we cannot, on review of a motion to reopen, exercise jurisdiction over that which we could not review on direct appeal.

(3) In order for this Court to determine its jurisdiction to review the BIA's affirmance of the IJ's decision, the BIA should clarify its understanding of the effect of the IJ's findings concerning Juras's application for admission to the United States once Juras was allowed to withdraw that application. Specifically, the BIA should explain what, if any, preclusive effect the IJ's finding of inadmissibility (seemingly affirmed by the BIA despite the withdrawal of the petitioner's application) would be given in subsequent immigration proceedings.

We therefore DISMISS in part and GRANT in part Juras's petition for review of the BIA's August 20, 2019, decision and remand

the matter to the BIA for consideration of whether the IJ's inadmissibility finding survived the withdrawal of Juras's application. We further DISMISS Juras's petition for review of the BIA's December 23, 2019, denial of his motion to reopen.